CARL *et al.* v. GABEL, *Appellant.*

Division One, February 19, 1894.

1. **Will:** ISSUE DEVISAVIT VEL NON: PLEADING. The petition need not directly allege that the testatrix was of unsound mind in order to try the statutory issue of *devisavit vel non.*

2. ———: ———: BURDEN OF PROOF. The *onus* is on the proponents of a will in such a contest to prove its proper execution and attestation, and also that the testator was of proper age and of sound mind.

3. ———: ———: ———. When the foregoing facts are established, the will is *prima facie* valid and it then devolves on the person assailing its invalidity on the ground of fraud or undue influence to prove the same.

4. ———: UNDUE INFLUENCE. Undue influence over a testator defined.

5. ———: ———: LEGATEE: PRESUMPTION. Undue influence may be inferred from facts and circumstances and for reasons of public policy, where a legacy has been given to one occupying a fiduciary relation to the testator, proof of the existence of such relation raises the presumption of undue influence which is fatal to the bequest unless it is rebutted by proof of full deliberation and spontaneity on the part of the testator and of good faith on the part of the legatee.

6. ———: ———: ———. Where the legatee neither prepared the will nor was connected with its preparation, and there is no evidence to show that he ever at any time exercised any power or dominion over the mind of the testator it is error for the court to impose on the legatee the burden of disproving undue influence.

| | |
|---|---|
| 120 | 283 |
| 127 | 581 |
| 120 | 283 |
| 135 | 503 |
| 120 | 283 |
| 138 | 213 |
| 120 | 283 |
| 144 | 366 |
| 120 | 283 |
| 145 | 442 |
| 148 | 468 |
| 120 | 283 |
| 153 | 316 |
| 154 | 580 |
| 120 | 283 |
| 160 | 579 |
| 120 | 283 |
| 162 | 644 |
| 162 | 646 |
| 162 | 647 |
| 120 | 283 |
| 166 | 481 |

*Appeal from Jackson Circuit Court.*—HON. JAMES
GIBSON, Judge.

REVERSED AND REMANDED.

*L. H. Waters* for appellant.

(1) Undue influence can not be inferred because
the testatrix was old and feeble in mind and body nor
because she made an unreasonable will. *Maddox v.
Maddox*, 21 S. W. Rep. 502; *Myers v. Hauger*, 98 Mo.
438; *Eckert v. Flowry*, 43 Pa. St. 52. (2) The fact
that defendant, at the request of testatrix called in an
attorney to write the will, and at the attorney's request
got two of his neighbors to go to his house to witness
the will justifies no inference of undue influence.
*Stirling v. Stirling*, 64 Md. 138. (3) The presence of
defendant's wife was not objectionable. It is not
charged that defendant's wife used any undue influ-
ence. The undue influence is limited to defendant.
*Jackson v. Hardin*, 93 Mo. 186. (4) The fact that
testatrix was at defendant's house and the recipient of
his kindness furnishes no evidence of undue influence.
*Aid Society v. Lorridge*, 70 N. Y. 387; *Kerr v. Lums-
ford*, 31 W. Va. 659; *Rutherford v. Morris*, 77 Ill.
397; *Allmon v. Pigg*, 82 Ill. 149; *Higgins v. Carlton*,
28 Md. 115; *Gardner v. Gardner*, 34 N. Y. 155;
*Glover v. Hayden*, 4 Cush. 580. (5) It would be a
great reproach to the law if it should deprive age and
infirmity of the kindly ministrations of affection or of
the power of rewarding those who bestow them.
*Maddox v. Maddox*, 21 S. W. Rep. 502; *Elliott's Will*,
2 J. J. Marsh. 340; *Rankin v. Rankin*, 61 Mo. 295.
(6) The influence denounced by the law must be such
as amounts to over persuasion, coercion or force
destroying the free agency of the testatrix. *Jackson v.*

*Hardin*, 83 Mo. 185; *Rankin v. Rankin*, 61 Mo. 295; *Norton v. Paxton*, 110 Mo. 456. (7) It must appear that the circumstances attending the execution of the will are inconsistent with any reasonable hypothesis but undue influence. *Brick v. Brick*, 66 N. Y. 144; *Eckert v. Flowry*, 43 Pa. St. 46; *McIntire v. McCoun*, 28 Iowa, 480; *Barnes v. Barnes*, 66 Me. 286; *Aid Society v. Lorridge*, 70 N. Y. 387; *Rabb v. Graham*, 43 Ind. 1; *Shailer v. Burnstead*, 99 Mass. 112. (8) The court erred in giving plaintiffs' second, third, fourth and fifth instructions. *Jones v. Jones*, 57 Mo. 138; *Chouteau v. Iron Works*, 83 Mo. 73; *Maddox v. Maddox*, 21 S. W. Rep. 502; *Myers v. Hauger*, 98 Mo. 438. (9) The court erred in refusing defendant's first, second, fourth and tenth instructions. *First.* The burden of proof as to the allegation of undue influence was on the plaintiffs and the first instruction should have been given. *Davis v. Davis*, 123 Mass. 590; *Baldwin v. Parker*, 99 Mass. 79. *Second.* There was no allegation in the petition that Mrs. Williams did not have sufficient capacity to make a will and that was not an issue in the case. *Bidwell v. Swank*, 84 Mo. 471; *Harris v. Hays*, 53 Mo. 90; *Stirling v. Stirling*, 64 Md. 138.

*J. W. Wofford* and *Morton Jourdan* for respondents.

(1) Our first point is, that when plaintiffs proved that Mrs. Williams had willed her property to a stranger in blood, and had virtually disinherited her only living blood relative, that this state of facts casts the burden upon Mr. Gabel to show the will to be the voluntary free act of the testatrix. *Harvey v. Sullens*, 46 Mo. 147; *Idem*, 56 Mo. 372; *Gay v. Gillilan*, 92 Mo. 250; *Thompson v. Ish*, 99 Mo. 160; Redfield on Wills [3 Ed.], pp. 31, 32, 33, and note 4 at foot of page

33; *Idem*, secs. 37, 39, p. 527; *Comstock v. Hodlyme*, 8 Conn. 254; *Woods' Ex'r v. Devers*, 19 S. W. Rep. (Ky.) 1; *Foster v. Dearborn*, 51 N. W. Rep. 614; *Heinman v. Heard*, 62 N. Y. 448; Rice on Ev., secs. 75, 76, 81–84; 16 Am. St. Rep., 437, note at page 437 and note on page 439, and authorities cited on page 440; *Scott v. Hull*, 8 Conn. 303; *Knox's Appeal*, 26 Conn. 22; *Weed's Appeal*, 35 Conn. 455; *Layman's Will*, 42 N. W. Rep. 286; *Elder v. Oliver*, 30 Mo. App. 576; *Cravens v. Falconer*, 28 Mo. 19; *Hammond v. Dike*, 42 Minn. 273; *Dinges v. Brownson*, 14 W. Va. 103; *In re Blakely's Will*, 48 Wis. 294–301; *Wilbur v. Wilbur*, 27 N. E. Rep. 701. (2) The court was right in the addition it made to defendant's instruction number 8, as set forth in his motion for a new trial in his fifth ground. *Thompson v. Ish*, 99 Mo. 171; *Bush v. Bush*, 87 Mo. 485, 486; *Tingley v. Cowgill*, 48 Mo. 297; *Gibson v. Gibson*, 24 Mo. 227; *Rule v. Maupin*, 84 Mo. 587; *Jones v. Roberts*, 37 Mo. App. 181. (3) An unnatural disposition of property is a strong circumstance in determining the question of undue influence. *In re Mitchell's Estate*, 44 N. W. Rep. 885; *Hammond v. Dike*, 42 Minn. 273. (4) Facts constituting undue influence: *Grove v. Spiker*, 20 Atl. Rep. 144; *O'Neil v. O'Neil*, 14 N. W. Rep. 59; *Hanna v. Wilcox*, 5 N. W. Rep. 717; *Watkins v. Brant*, 1 N. W. Rep. 82; *Lyons v. Campbell*, 7 S. Rep. 250. (5) On contest of will for undue influence, evidence of testatrix's feelings, as shown by her declarations is competent. *Campbell v. Canahan*, 13 S. W. Rep. 1098; *Gardner v. Frieze*, 19 Atl. Rep. 113.

BRACE, J.—This is a statutory proceeding instituted in the circuit court of Jackson county, to contest the validity of the will of Pauline Williams theretofore duly admitted to probate in the probate court of said

county in the month of November, 1888, whereby she devised and bequeathed all her estate to the plaintiff, Headwig Harder Carl, her granddaughter and only heir at law, and to the defendant, William Gabel. The property consisted of a lot in Kansas City and personal property of the value of about $1,500. By the will she bequeathed all her personal property to the defendant Gabel, who was made executor thereof, and directed that the lot be sold, and the proceeds equally divided between him and her granddaughter.

The substance of the petition is that the said Pauline Williams at the time of the execution of the instrument was old, feeble in mind and body, and that the same is not the will of said Pauline, but of the said defendant Gabel, by whose over-persuasion and undue influence it was procured to be made.

It appears from the evidence that at the time of the execution of the will Mrs. Williams was about seventy-three years of age; that the will was executed on the fifth, and that she died on the fourteenth of November, 1888; that she had been twice married; that she had one child by her first husband, Mrs. Theresa Hœder, the plaintiff's mother, who died on the sixth day of August, 1888; that she had no children by her second husband, Henry Williams, who died on the twenty-eighth of October, 1888, aged about seventy years, intestate, the owner of all the property bequeathed in the will, leaving her his only heir at law; that the plaintiff, after the death of her mother, stayed with her grandmother about three weeks, then went to Quindaro, Kansas, where she remained until the twenty-ninth of September, 1888, when she was married, and thereafter she and her husband moved to Armourdale, Kansas; that Mr. and Mrs. Williams were both Germans and could speak very little English.

They were living by themselves in their own home

in Kansas City, and, except the plaintiff, they had no other known relatives.   During the summer and fall of 1888 they were both in feeble health, but employed neither a nurse nor a servant, and after the plaintiff went off to Kansas and married, about the first of September, they seem to have had no attention paid to them, except such as could be given them at irregular intervals by their neighbors, until the first day of October, when their condition seems to have become known to the sisters of the German Catholic hospital. Dr. Neumister was called in on the eighth of October, and found the husband in bed sick with Bright's disease, and the wife up, waiting on him as best she could, but suffering from heart disease.   The doctor attended on them professionally at their home until the seventeenth of the month, when by his advice, they (not being able or willing to procure the services of a nurse at home) were removed to the hospital, where he continued to wait on them.   The next day after their arrival at the hospital, the testatrix expressed to the doctor great dissatisfaction at their situation there, and urged him to have them taken somewhere; to somebody away from there.   Upon his telling them he did not know of any person who would be willing to take them, Mrs. Williams asked him to see if the defendant, Mr. Gabel, would not take them.  He, it seems, was also a German, one of Mr. Williams' earliest friends in Kansas City, and a brother Odd Fellow.   The doctor saw the defendant, who declined to take them, but consented to see and talk with them.   Afterwards he visited them at the hospital.   The doctor advised him and Mrs. Williams that her husband could not be moved, and could not live more than two or three days, and finally, at the urgent solicitation of the doctor and Mrs. Williams, he consented to take the old lady to his home, which he did, and there she remained

until she died.   This must have been about the twenty-fifth of October.   As before stated, on the twenty-eighth Williams died, and was buried by the Odd Fellows, of which order both he and Mr. Gabel were members.

The will was drawn by an attorney named Bauerlein, who was in the insane asylum at the time of the trial.   The defendant testified: "I went after him at Mrs. Williams' request on Saturday.   The will was made the next Monday.   I told him that Mrs. Williams was at my house and wanted to make a will, and I asked him to attend to it.   Bauerlein came to see her Saturday afternoon.   I introduced him to her and then left them in the room together.   No member of my family was in there with them.   I don't know what talk they had.   Bauerlein told me to get two witnesses. Bauerlein was there again Monday morning.   I got Mr. Huth and Mr. Newberger, my neighbors.   Mr. Huth and Mr. Williams belonged to the same lodge. Mrs. Carl was not there Monday afternoon.   I was not present when the will was signed.   I never had any talk with Mrs. Williams about leaving her property to me, nor to any of my family.   When she first spoke of having a will made I told her not to let that bother her, to go ahead and get well and move into her own house.   Bauerlein had a talk with her before he drew the will.   After the will was made and they had all left, my wife told me about the will.   I administered on his estate at her request."

It appears that Bauerlein drew the will as the result of his interview with Mrs. Williams on Saturday, and brought it to her room at the defendant's house on Monday afternoon of the fifth of November, 1888, where it was signed by Mrs. Williams, who was sitting in a chair, in the presence of the two attesting witnesses, Huth and Newberger, both of whom were Ger-

mans. After it had been read by the attorney in English, and interpreted to her word by word in German, by the attesting witnesses, she expressed herself entirely satisfied with it. There was no one present in the room, except the testatrix, the lawyer and the attesting witnesses, when the will was executed. Mrs. Gabel, the wife of the defendant, was, however, standing in the door leading from the testatrix's room to the family room, saw its execution, and heard the will read.

The plaintiff, Mrs. Carl, testified that she visited her grandmother at the hospital, and afterwards almost daily at Mrs. Gabel's house; that she was there on the afternoon of the fifth, and that her grandmother was then flighty, talking out of her head; that before and after that, her mind was all right; that on the eighth of November she and her husband rented the house of her grandmother for ten dollars a month, paying her the first month's rent and taking a receipt therefor from Gabel, who in the meantime had been appointed administrator of Mr. Williams' estate at the request of the widow. She says she heard the will was made, the next day after it was made, but that neither her grandmother, nor Mr. or Mrs. Gabel ever said anything to her about it.

On the trial the defendant introduced the attesting witnesses who testified to its execution and publication and that she was at the time of sound mind. The plaintiff then introduced evidence tending to prove that the mind of testratrix was impaired by disease and old age; that she was eccentric, childish, abnormally stingy, and much distressed at the condition of her husband's health; and of declarations of the testatrix to the effect that at the death of her and her husband plaintiff was to have all their property. The defendant, in rebuttal, introduced in support of the testimony of the attesting witnesses, additional evidence tending

to prove that, though old and in feeble health at the time of the execution of the will, the testatrix was of sound mind and capable of disposing of her property; and of declarations of the testatrix to the effect that she would have willed all of her property to the plaintiff if she hadn't got mad, gone off, and got married, and would not come near her when she was sick.

At the request of the plaintiff the court gave the following instructions:

"1. The court instructs the jury that if they believe from the evidence that at the time the will was made Pauline Williams was old, feeble in mind and body from sickness, and had not sufficient understanding and intelligence to transact her ordinary business affairs and to comprehend the transaction then in question, the nature and extent of her property, and to whom she was giving the same, then she had not sufficient capacity to make a will.

"2. The court instructs the jury that if they believe from the evidence that at the time the will was made Pauline Williams was old and feeble in mind and body and that William Gabel, the defendant, is the principal beneficiary under the will of Pauline Williams and requested the subscribing witnesses to sign their names to the same, and that the attorney who drew the will and said witnesses and Gabel's wife were the only persons present when said will was made and they alone knew the contents of said will, and said Pauline Williams was at that time at the house of the defendant Gabel, then the jury are warranted in considering such evidence as tending to prove that said Gabel procured the said Pauline Williams to make said will by undue influence.

"3. The court instructs the jury that if they believe from the evidence that William Gabel, the

defendant, is in no way related to the testatrix, Pauline Williams, and that the said Gabel is the principal beneficiary under the will of said Pauline Williams, and that said Pauline Williams was at the time the will was made at the house of said Gabel, and that the said Gabel's wife and the witnesses to the will were present at the time the will was made, by request of defendant, and that the granddaughter of said Pauline Williams was not present and not asked to be present, and shall further believe that the plaintiff, Mrs. Carl, was the sole heir-at-law of the said Pauline Williams, then these facts are such as to cast the burden upon the said William Gabel to prove that the will was the voluntary, free act of the said Pauline Williams; and further, that such facts, if proved to the satisfaction of the jury, are such as they have the right to consider in determining whether the will, as made, was the result of undue influence on the part of William Gabel on the mind of the said Pauline Williams.

"4. The court instructs the jury that if they believe from the evidence that Pauline Williams, when she made the will in question, was old and feeble, and that for some time prior to her death she had been living at the house and with the family of William Gabel, the defendant; that the said William was not related to her by blood or marriage; that the only surviving descendant and heir-at-law of the said Pauline Williams is Mrs. Carl, one of the plaintiffs in this case, who was not present when said will was executed; that the will in question was executed at the house of the said William Gabel, who requested the witnesses to attest the same, and that the said William Gabel is the principal beneficiary under said will, then the jury may presume that the said Pauline Williams at the time the will was executed was under the influence of said William Gabel, and the burden is then upon the

defendant of establishing to the satisfaction of the jury that the will of the said Pauline Williams was voluntary and the free act and deed of the said Pauline Williams.

"5. Undue influence may be proved by circumstances; and in determining the issue in the case, the jury have the right to take into consideration all the facts and circumstances as proved in this case to determine whether undue influence was used or not by the defendant."

And refused to give the following instructions asked for defendant:

"1. The plaintiffs do not deny the execution of the will in question, but attack its validity on the ground of undue influence exercised over the testatrix, Pauline Williams, and if the jury find from the evidence that she signed the will in the manner testified by the subscribing witnesses, and that at the time of such signing she had sufficient understanding and intelligence to transact her ordinary business affairs and to understand what disposition she was to make of her property, the nature and extent of her property and to whom she was giving it, then the jury will find that she had sufficient capacity to make a will, and that said will is the last will and testament of the said Pauline Williams, unless they further find from the testimony that the making and signing of said will was procured by an undue influence which amounted to a moral force or coercion, destroying the free agency of the said Pauline Williams, and in such case the burden is on plaintiffs to show by a preponderance of the evidence the existence of such undue influence.

"2. The jury are instructed that the influence of a friend, if exercised in a fair and reasonable manner and without deception or imposition upon a testator, and while he had capacity to deliberate and estimate the inducements offered, will not avoid a will, when made

in favor of such friend; and in this case, if the jury find from the evidence that there was no fraud or deception practiced upon the testatrix; and that, considering the state of her health and mind, the influence used by the defendant was not of such a degree as to destroy the free agency of the testatrix, and to make the will his and not hers, then the jury will find by their verdict that the will in question was the last will and testament of the said Pauline Williams.''

"4. The court instructs the jury that if Mrs. Pauline Williams signed the instrument in writing, offered in evidence as her last will, and at the time of such signing she had sufficient understanding and intelligence to transact her ordinary business affairs and to comprehend the transaction then in question, the nature and extent of her property, and to whom she was giving the same, then she was a person of disposing mind and had a right under the law to dispose of her property by will as she saw fit and proper.''

"10. The court instructs the jury that under the pleadings in this case there is no controversy in regard to whether Pauline Williams, at the time of making said will, had a sound mind or disposing memory, but that it is admitted that said Pauline Williams had a sound mind and disposing memory.''

Under the instructions the jury returned a verdict finding "the writing produced is not the will of said Pauline Williams.'' Judgment was thereupon accordingly rendered, and the defendant appeals, assigning for error the giving of plaintiff's instructions aforesaid and the refusal to give defendant's instructions aforesaid.

I. We find no error in the refusal of the court to give defendant's instruction number 10 or in giving number 1 for plaintiff. While it was not directly alleged in the petition that the testatrix was not of

sound mind, this issue was necessarily involved in the issue which the court under the statute is required to frame and submit to the jury, *i. e.*, "whether the writing produced be the will of the testator or not," which issue must be tried by a jury. The court had no right to withdraw any part of that issue from the consideration of the jury. It is well settled law in this state that "the *onus* is on the proponents of a will, in a contest of this character, to prove its proper execution and attestation and also that the testator was of proper age and of sound mind. When these facts are shown, a will *prima facie* valid is established, and it then devolves upon those attacking its validity to prove fraud or undue influence if either is charged." *Maddox v. Maddox*, 114 Mo. 35, and authorities cited; *Harris v. Hays*, 53 Mo. 90.

II. The court, by refusing to give defendant's instruction number 1, and giving plaintiff's instructions numbers 2, 3 and 4, upon the issue of undue influence, cast the burden of proof upon the defendants. In these instructions for plaintiff the undisputed facts, that the plaintiff is the only heir-at-law of the testatrix; that the defendant was not related to her by blood or marriage; that she was old and feeble; that the will was executed at his house, where she had then been living for about ten days; that it was drawn by an attorney and attested by witnesses notified by the defendant to attend upon her for that purpose; that they only were present in the room, with the wife of the defendant standing in the door, when it was executed, and knew its contents; that the plaintiff was not present, asked to be present at the execution, or notified of the contents of the will, and that, by its terms, a larger portion of the testatrix's estate was given to the defendant than to the plaintiff—these undisputed facts about which no contention was made

—are, by these instructions, selected out of the great mass of attendant and explanatory circumstances which appeared in the evidence, grouped together in the most impressive and forcible language that they could possibly bear under the evidence, and reiterated to the jury in three instructions in the most persuasive manner that a form of instruction would permit, by the first of which they were told that such facts tended to prove that the defendant procured the will to be made by undue influence over the testatrix; by the second, that such facts cast the burden of proof upon the defendant to prove that the will was the voluntary, free act of the testatrix; and by the third, that from these facts they were authorized to presume that at the time of the execution of the will, the testatrix was under the influence of the defendant, and that it devolved upon him to prove to the satisfaction of the jury that the will was the free act and deed of the testatrix. And thus the burden of proving undue influence was lifted from the shoulders of the contestant, where it properly belonged, and the burden of negativing not only such influence, but any influence, was placed upon the shoulders of the contestee; for, while the instructions in the first start out with the idea that these facts are sufficient to make a *prima facie* case of *undue influence* by the defendant, yet they wind up in the last with the idea that they may accomplish the same purpose by showing simply *an influence* of the defendant over the mind of the testatrix.

There is not much contrariety of opinion in the courts as to what constitutes undue influence such as will vitiate a will. It must be an influence "exerted *male fide* to produce a result which the party, as a reasonable person, was bound to know was unreasonable and unjust; and it must have the effect of producing illusion or confusion in the mind of the testator, so as

either to overcome free agency, or power of judging upon the true relations between himself and those who might be supposed to have just claims upon his bounty." 1 Redfield on Wills [3 Ed.], sec. 38, par. 38. It must not be such "as arises from the influence of gratitude, affection, or esteem, but it must be the control of another will over that of the testator, whose faculties have been so impaired as to submit to that control, so that he has ceased to be a free agent, and has quite succumbed to the power of the controlling will." *Ib.* sec. 38, par. 47.

The issue of undue influence being one of fraud or bad faith, it devolves upon him who charges undue influence to prove it. Fraud is never presumed. But undue influence, like every other fraud, can rarely be proved by positive and direct evidence. It is not necessary that it should be so proved; it may be inferred from facts and circumstances, and, upon the ground of public policy, the doctrine of courts of equity has been adopted in these contests, that, where a legacy has been given by a testator to one occupying a fiduciary relation to him, "proof of the existence of such relation raises the presumption of undue influence which is fatal to the bequest, unless rebutted by proof of full deliberation and spontaneity on the part of the testator, and good faith on the part of the legatee." 1 Woerner's Am. Law of Adm'r, sec. 32; *Garvin's Adm'r v. Williams*, 44 Mo. 465; *Bridwell v. Swank*, 84 Mo. 455.

The rule has been extended in this state to embrace the case of a scrivener of a will made largely in his favor, who for years had occupied the relation of a confidential friend and who had written previous wills for her, the court quoting the language of Parke, B., in 1 Curteis's Ecc. Rep. 637, "that if a party writes or prepares a will, under which he takes a benefit, that is a circumstance which ought generally to excite the

suspicion of the court, and calls upon it to be vigilant and jealous in examining the evidence in support of the instrument, in favor of which it ought not to pronounce unless the suspicion is removed, and it is judicially satisfied that the paper propounded does express the true will of the deceased." *Harvey v. Sullens*, 46 Mo. 146.

In *Gay v. Gillilan*, 92 Mo. 251, the rule was extended further to embrace the case of a son, who, by his conduct, had placed the mind of his aged father in complete subjection to his demands, and the doctrine broadly laid down that "where undue influence is once proved to exist, by whatsoever means produced or acquired, whenever the mind of one person is reduced to a state of vassalage to that of another, and a gift is shown to have been made by the weaker party to the stronger, then the burden of proof will be shifted; the gift will become presumptively void, and the *onus* of upholding its fairness and validity will rest upon the shoulders of the recipient of the gift," and in that case it was further said that "courts of law, when called upon for redress in such cases, give it on precisely the same principle that guides courts of equity in analogous cases. * * * The only diversity observable in the application of the principle in question being this that in case of fiduciary relations, a court of equity will presume confidence placed and influence exerted. Where no such relations exist, the influence or the dominion acquired must be proved."

The facts proved in this case did not bring it within the operation of the principle as stated by any of the cases. There existed between the testatrix and the defendant no fiduciary relation. The defendant did not prepare the will or have anything to do with its preparation, and there was no evidence showing that

he had ever at any time exercised any power or dominion over her will. On the contrary, wherever in the evidence the wills of the two are found to be operating together upon the same subject, it was the will of the testatrix that always dominated. The fault most to be found with her mental make-up was a perverse determination to have her own way, whatever others might think, say or do.

There was nothing in the case that warranted the court in shifting the burden of proof. The jury should have been permitted to weigh the facts and all the facts in their proper connection with and relation to each other, so that if they found the testatrix at the time she executed the will in manner and form as required by the statute was of sound mind, they would not feel authorized by their verdict to set it aside, unless they were satisfied from all the evidence thus considered, that it was in fact the result and product of undue influence exercised over her by the defendant. He had the right to have the issue so presented to the jury, and when the case is thus presented, it is shorn of much of the sinister appearance given it in these partial and commentative instructions. It is evident that the defendant could not have had a fair trial, according to law, of the issue of undue influence under these instructions, and for the error in giving them judgment is reversed and the cause remanded for new trial. All concur, except BARCLAY, J., absent.