Campbell v. Carlisle.

CAMPBELL et al., Appellants, v. CARLISLE et al.

Division Two, May 21, 1901.

1. **Will: UNDUE INFLUENCE: CONFIDENTIAL RELATIONS: SHIFTING BURDEN.** The fact that testator had no descendants and made small bequests to his own near relatives and those of his first wife; the fact that he was at the home of the executor and was then, at the time the will was made, a very old man, sick, weak in mind and body, and that the executor then had control of him and his property, and that he was helpless, was waited on, supported, cared for, nursed and given medicine by the executor and his wife, who were of no kin to him, who had persuaded him to come to their house against his wish, and who expected to and did receive compensation for their services; and the further fact that he made the executor's wife and seven other persons equal legatees to nearly the entire estate, and therein expressed confidence in the business ability and integrity of the said executor, and stated he had attended to his business for a long time, which was not true, and placed his bond at $2,000 although the estate amounted to more than $20,000, do not shift the burden to the proponents of the will to show why they received the gifts, or that the will was not the result of undue influence. These facts are all consistent with the testator's free exercise of the right to dispose of his property as he saw fit, and

Campbell v. Carlisle.

hence do not show or tend to show that the will was the result of fraud, coercion or undue influence on the part of the executor or his wife.

2. ———: ———: SUPPORT: DEBT. The fact that the testator, sometime prior to the execution of his will, surrendered to the executor a note for a large amount of money, in consideration for his support and maintenance and proper care during his lifetime, has no tendency to show the existence of confidential relations between them at the time the will was made.

3. ———: ———: KINDNESS AND AFFECTION. The rule that any degree of influence over another acquired by kindness and attention can never constitute undue influence within the meaning of the law concerning wills, applies alike to wills whose execution is procured by the influence of a friend, as well as to those whose execution is procured by the undue influence of a wife, child or other kinsman.

Appeal from Boone Circuit Court.—*Hon. Jno. A. Hockaday, Judge.*

AFFIRMED.

*W. M. Williams, C. B. Sebastian* and *Webster Gordon* for appellants.

(1) The trial court committed reversible error in giving and permitting to be read to the jury defendants' instruction number 2. The undisputed evidence shows that at the time of the making of the will, the defendant Carroll was managing all the business of the testator; that he had the old man at his home and had the absolute control of him and all he had; that the old man was sick, weak in body and mind, as helpless as a child, was waited on, cared for, nursed and given his medicine by Carroll and wife who were of no kin to him, and according to their own testimony expected and received compensation for their services; they derived a benefit from the will and under such circumstances, the rule is changed. The

confidential relations probably could not be more strongly expressed than they are by the eighth item of the will.    It is earnestly insisted that this places the case within the exception where the law requires the defendant to show that the will was made freely and voluntarily, without any undue influence, fraud or deceit upon the part of the defendants, Thomas H., and Bettie W. Carroll.    Maddox v. Maddox, 114 Mo. 46; Hegney v. Head, 126 Mo. 628; Dingman v. Romine, 141 Mo. 466; Gordon v. Burris, 153 Mo. 223; Tibbe v. Kamp, 154 Mo. 580.    (2)    The trial court committed a further reversible error in giving and permitting to be read to the jury defendants' instruction number 7.    This instruction is not applicable to the facts in this case.    The defendants charged with undue influence are not of kin to the testator.    The rule laid down in the case of wife and children does not apply here. The defendants, Thomas H. and Bettie Carroll are strangers to the testator's blood, serving him for pay.    They served him kindly and well and were well paid by the allowance of their bill for such services by the probate court and paid out of Carlisle's estate, to say nothing of the thirty-two hundred dollar mortgage on the farm which was released, and the thousand dollar check obtained as a gift.    This instruction asserts a novel doctrine that any degree of influence over another acquired by kindness and attention can never constitute undue influence within the meaning of the law.    Hegney v. Head, 126 Mo. 629.

*Odon Guitar, Wm. R. Gentry, N. T. Gentry* and *Wellington Gordon* for respondents.

(1)    Defendants' instruction 2 is a literal copy of one that has time and time again, been approved by this, and other courts of last resort.    Carl v. Gabel, 120 Mo. 293; Sehr

v. Lindemann, 153 Mo. 288. The burden is not on the beneficiary to show why he received the gift, or that the will was not the result of undue influence. Aylward v. Briggs, 145 Mo. 613; Cash v. Lust, 142 Mo. 642. It has often been decided, that the onus is on the proponents of the will to prove the proper execution of the will and also that the testator was of sound mind and legal age. When these facts are shown, a prima facie will is established, and the burden is then upon the contestants to show fraud or undue influence. Maddox v. Maddox, 114 Mo. 46; Harris v. Hays, 53 Mo. 96; Baldwin v. Parker, 99 Mass. 79; Jackson v. Hardin, 83 Mo. 182; Morton v. Heidorn, 135 Mo. 608; Fee v. Taylor, 83 Ky. 259; Kitchell v. Beach, 35 N. J. Eq. 446; Rockwell's Appeal, 54 Conn. 119; Schouler on Wills, sec. 239. (2) No error was committed by the trial court in giving instruction 7 at the request of defendants. McFadin v. Catron, 138 Mo. 218; Riley v. Sherwood, 144 Mo. 366; Carl v. Gabel, 120 Mo. 283; Jackson v. Hardin, 83 Mo. 175. The mere fact that defendant Carroll went for the attorney to write the will, the fact that the testator was living with the Carroll family at that time, coupled with the further fact that Mrs. Carroll receives a small part of his estate, do not show undue influence, neither do they tend even to show it. Doherty v. Gilmore, 136 Mo. 414; Rule v. Maupin, 84 Mo. 591; Carl v. Gabel, 120 Mo. 295; Eckert v. Flowry, 43 Pa. St. 52; Aylward v. Briggs, 145 Mo. 613; West v. West, 144 Mo. 119; Montague v. Allan, 78 Va. 592. The undue influence which will invalidate a will must be such as amounts to overpersuasion, coercion or force, destroying the free agency and will power of the testator. Ketchum v. Stearns, 8 Mo. App. 70; s. c., 76 Mo. 396; McIntyre v. McConn, 28 Iowa 480; Barnes v. Barnes, 66 Me. 286; Pendlay v. Eaton, 130 Ill. 69; Wilbur v. Wilbur, 129 Ill. 392; Eckert v. Flowry, 43 Pa. St. 52; Forney v. Fer-

rell, 4 W. Va. 729; 2 Greenl. on Evid., sec. 688; Jarman on Wills (Perkins Ed.), p. 72; Redfield on Wills (3 Ed.), pp. 31, 32; Woerner's Amer. Law of Admr., sec. 31. The undue influence must be such as to completely subjugate the mind of the testator to the will of the person operating upon it. Tawney v. Long, 76 Pa. St. 115; Elkinton v. Brick, 44 N. J. Eq. 165; Schmidt v. Schmidt, 47 Minn. 457; Tyson v. Tyson, 37 Md. 567; Children's Aid So. v. Loveridge, 70 N. Y. 387. The influence acquired by acts of kindness and attention is not undue influence, such as will invalidate a will. Thompson v. Ish, 99 Mo. 182; Jackson v. Hardin, 83 Mo. 185; Mackall v. Mackall, 135 U. S. 171. Influence which exists through attachment, affection or a desire to gratify, or which results from argument and appeals to reason and judgment, is not undue influence. Schofield v. Walker, 58 Mich. 96; Wise v. Foote, 81 Ky. 15.

BURGESS, J.—This is a statutory contest of the will of John Carlisle, deceased. The will was executed on the twenty-third day of May, 1894, and admitted to probate in Boone county where the testator died, on the twentieth day of October, 1894, and letters granted to Thomas H. Carroll, the executor named in the will, in November, 1894, who as such executor, took charge of the estate.

The suit is being prosecuted by the sister and other near relatives of the testator, who allege in the petition that at the time of his death he owned personal and real property of the value of about twenty thousand dollars, a large portion of which was by the will given to persons who were of no kin and had no claim upon the bounty of the testator. They further allege that the testator, at the time of making the pretended will, was an old man; that his mind had become impaired by disease and the effect of medicine; that he was incapable of making

a will, and that the making and publication thereof was procured by the defendants, Thomas H. Carroll and Bettie W. Carroll, by fraud, artifice and undue influence, which they exercised over the deceased, and that it is not his will.

The answers were general denials and affirmed the validity of the will.

The portions of the will that have any bearing upon the issues involved are as follows:

"Item 1.   I give and devise to my sister, Susan Campbell, of Benton county, Arkansas, three lots in Rogers, Arkansas, each lot containing one acre more or less, and known as the John French property and situated near the college.   I also give to my said sister the sum of three hundred dollars in money.

"Item 2.   I give and bequeath to Mary Eliza Harrison, daughter and only child of my sister, Mahala Harrison, deceased, the sum of three hundred dollars in money.

"Item 3.   To the five children of my brother, Thomas Carlisle, deceased, late of Gallatin county, Kentucky, I give and bequeath the sum of one hundred dollars each.

"Item 4.   To the children of my deceased sister, Mrs. Sallie Griffin, late of Gallatin county, Kentucky, I will and bequeath the sum of five hundred dollars, which sum I want to be equally divided among them, share and share alike.

"Item 5.   I have not heard from my brother, Daniel Carlisle, since 1852; he was then living in Sacramento, California. If he is still living I give to him the sum of five hundred dollars, but if he is dead I want said five hundred dollars to be equally divided among his heirs.

"Item 6.   To Mrs. Ann Wregg, I give and bequeath the sum of sixteen hundred dollars.   She was a sister of my first wife and is now living in Georgetown, Scott county, Kentucky. I desire that this money be paid to her by my executor, and if

any of it is left after her death, I want the same divided equally among her daughters, viz., Emma, Huldah, Lula, Bettie W. and Fannie.

"Item 7.    After paying all my just debts and funeral expenses, and also putting up a suitable monument over my last resting place and the graves of my two wives, I desire that my executor divide equally the residue of my estate among the following:   The children of my brother, Thomas Carlisle, the children of my sister, Sallie Griffin, the children of my brother, Daniel Carlisle, my sister, Mrs. Susan Campbell, Mary Eliza Harrison, daughter of my sister, Mahala Harrison, deceased, and the above-named children of Ann Wregg, Emma Wregg, Huldah Kelley, Lula Wregg, Bettie W. Carroll and Fannie Ammerman.

"Item 8.    I hereby nominate and appoint my trusted friend, Thomas H. Carroll, as my sole executor, and in consideration of the confidence that I have in his business ability and in his honor, his honesty and his integrity, I request that he be required to give bond and security for only two thousand dollars.   My estate is worth much more than that amount, but I know Carroll and I am sure he will attend to it right as he has attended to my business for a good long time.   I request that my executor see that my body is buried to the left of where my wife, Myra, is buried, and that he also see that the remains of my first wife are moved and placed to the left of where I rest.   It is my desire that we all three shall be buried in the Columbia cemetery, and I want my executor to see to erecting the tombstones."

At the time of the execution of the will the testator was of the advanced age of about ninety years.   He was unable to read or write, yet he had been quite successful in the accumulation of property and money.   He was crippled, in bad health, and infirm, but not more so than might be expected of one of

Campbell v. Carlisle.

his years. While for several years prior to his death he did not give personal attention to all of his business, he looked to see that those with whom he trusted it, attended to it properly. There was evidence tending to show that he was easily influenced, susceptible to kind treatment and trusted implicitly in those who treated him kindly and showed him favor and attention. In about 1890, he went to live in Rogers, Arkansas, and left his nephew, J. W. Carlisle, of Columbia, Missouri, in charge of his business. He remained in Rogers until 1893, when he returned to Columbia, stayed a short time with his nephew, J. W. Carlisle, and went over his business with him. At this time the defendants, Thomas H. and Bettie Carroll, owed him a note, which amounted to about thirty-two hundred dollars, secured by a deed of trust on their farm. They had failed to pay the interest and he insisted on the payment of the note. They were unable to pay it and he spoke of selling them out. He then went to his farm, which was near where Carroll lived, and on the ninth of January, 1894, his wife died. They had no children. After the burial, Mrs. Carroll insisted that he should stay at their house until he could make some other arrangements. He objected, stating that he did not want to go; said that he knew she only wanted to get his money, but that she should never have a dollar of it. But finally she persuaded him to go. He was taken down with pneumonia and never got away. Shortly after he went to Carroll's he took his business out of the hands of his nephew, J. W. Carlisle, and employed Col. S. Turner. The Carrolls then got him to give up the thirty-two hundred dollar note and deed of trust on their home, and had the same released by deed of release in consideration that they should support him during his life. Colonel Turner insisted that this agreement should be put in writing, which was done. Shortly after this but not until after

the execution of the will, Colonel Turner's power of attorney was revoked, and the defendant, Thomas H. Carroll, appointed in his stead.

The contract for the care and support of Carlisle during his life, given by the Carrolls, in consideration of the surrender of the thirty-two hundred dollar note was then released, and Carroll, under his power of attorney, assumed control of all the business and placed all of Carlisle's money, about six thousand dollars, in the bank to the credit of Carroll & Company. Carlisle destroyed all his former wills, and the one now being contested was written. In all of the other six wills he provided for the members of his own family, while this will gives a large portion of his property to those who are of no kin, and gives to his only sister three hundred dollars and houses and lots in Rogers, Arkansas, that he didn't own, and an un- . divided interest in his property after paying the special bequest made by the will. After Carlisle's death Carroll presented to the probate court a claim for board and attention to Carlisle and was allowed thereon the sum of five hundred dollars, which was paid out of the estate. All the evidence showed that the testator was cared for and kept by the Carrolls at their home, they nursing him, caring for him, giving him medicine and treating him with much consideration and kindness. All of plaintiff's witnesses thought him incapable of making a will, while defendant's witnesses thought he had sufficient capacity to make a will. Under the instructions given by the court, the jury returned a verdict sustaining the will, and judgment was so entered. After an unsuccessful motion for a new trial, plaintiffs perfected an appeal to this court, and ask that the judgment of the trial court be reversed for the following reasons:

It is said that the court committed error in giving instruction numbered two on the part of defendants. This instruc-

tion told the jury that: "If the jury find from the evidence that John Carlisle signed the will in the manner testified by the subscribing witnesses, and that at the time of such signing he had sufficient understanding and intelligence to understand what disposition he was making of his property, the nature and extent of his property, and to whom he was giving it, then the jury will find that he had sufficient capacity to make a will, and that said will is the last will and testament of the said John Carlisle, unless they further find from the testimony that the making and signing of said will was procured by defendants, Thomas H. Carroll and Bettie W. Carroll, or either of them, by an undue influence which amounted to a moral force or coercion, destroying the free agency of the said John Carlisle; and in such cases the burden is on the plaintiffs to show by a preponderance of the evidence the existence of such undue influence."

The contention is based in part upon the assertion that the undisputed evidence shows that at the time of the making of the will the defendant, Thomas H. Carroll, was the testator's attorney in fact and was managing all his business, but this is a misconception of the evidence, which shows that Col. Turner was then his attorney in fact, attending to his general business, and continued to do so until June or July next after the execution of the will, when the testator revoked the power of attorney under which he was acting, and appointed T. H. Carroll his attorney in fact, who then took charge of and attended to his business for him.

The question, then, is, did the facts that the testator was at the house of Carroll; that he was sick, weak in body and mind, helpless, was waited upon, cared for, nursed and given his medicine by Carroll and his wife, who were not related to him, and who expected to and did receive compensation for their services, and the further fact that by the eighth and last clause

of the will it is said, "I hereby nominate and appoint my trusted friend, Thomas H. Carroll, as my sole executor, and in consideration of the confidence I have in his business ability and in his honor, his honesty and his integrity, I request that he be required to give bond and security for only two thousand dollars. My estate is worth much more than that amount but I know Carroll and I am sure he will attend to it right as he has attended to my business for a good long time," shift the burden of proof to the proponents of the will to show why they received the gifts, or that the will was not the result of undue influence.?

Ordinarily, in cases of this character, the burden is upon the proponents of the will, to prove its proper execution, and attestation, and that the testator was twenty-one years of age or over, and of sound mind, and when these facts are shown the proponents make out a prima facie case, and it then devolves upon those attacking the validity of the will to prove fraud or undue influence, if either is charged. [Norton v. Paxton, 110 Mo. 456; Gay v. Gillilan, 92 Mo. 250; Maddox v. Maddox, 114 Mo. 35; Carl v. Gabel, 120 Mo. 283; Berberet v. Berberet, 131 Mo. 410.] But in cases where a "patient makes a will in favor of his physician, a client in favor of his lawyer, a ward in favor of his guardian, or any person in favor of his priest or religious adviser, or where other close, confidential relations exist, the law indulges the presumption that undue influence has been used, and such wills, when made to the exclusion of the natural objects of the testator's bounty, are viewed with great suspicion by the law, and some proof should be required beside the *factum* of the will before the will can be sustained." [Marx v. McGlynn, 88 N. Y. 357; Hegney v. Head, 126 Mo. 619.] There is nothing, however, disclosed by the record which removes the case at bar from the general rule, as no such confidential relations existed between the testator

and T. H. Carroll at the time of the execution of the will as to raise the presumption that its execution was obtained by fraud or undue influence, and that is the only ground upon which there can be the slightest pretext for such contention. The testator had no descendants, but made provisions for all of his own near relatives and those of his first wife, and clearly the facts that he was at the home of Carroll at the time of the execution of his will, and for some time prior thereto; that Carroll had control of him and his property, that the testator was ill and weak in body and mind, was helpless, was waited on, cared for, nursed and given his medicine by Carroll and wife, who were of no kin to him and who expected to and did receive compensation for their services, and, the further fact that after making bequests to different persons amounting in the aggregate to about $3,300, he gave the balance of his estate, which he said in his will amounted to more than $20,000, equally between Mrs. Bettie Carroll and eight other persons, and that he appointed, Thomas H. Carroll, his executor, and expressed confidence in his business ability and integrity, and requested that he only be required to execute bond as executor in the sum of $2,000, raised no such presumption, for the reason that these facts, under the circumstances, were perfectly consistent with the free exercise of the right to dispose of his property as the testator saw fit. The fact that the testator, sometime prior to the execution of his will, surrendered to Thomas H. Carroll a note for about $3,000 which he held upon him in consideration for his care, maintenance and support during his lifetime, can not be considered in passing upon the question now under consideration, and it has no tendency whatever to show the existence of confidential relations between them at the time of the execution of the will. The facts of the case of Dingman v. Romine, 141 Mo. 466, are so different from the facts of the case at bar that we do not think it authority for

holding, in the case at bar, that there was sufficient evidence to establish a presumption of undue influence. And in the absence of such presumption, the instruction is in accordance with the rulings of this court in Carl v. Gabel, 120 Mo. 283; and Sehr v. Lindemann, 153 Mo. 288.

It is also claimed that instruction numbered seven, given in behalf of defendants, was erroneous. By this instruction the jury were told: "The court instructs the jury that any degree of influence over another acquired by kindness and attention can never constitute undue influence within the meaning of the law, and, although the jury may believe from the evidence, that the deceased, John Carlisle, in making his will, was influenced by any other person or persons, still if the jury further believe from the evidence that the influence which was exerted, was only such as was gained over the deceased by kindness and friendly attention to him, and not such as to destroy his free agency and make the will not his, but that of such person, then such influence can not be regarded in law as undue influence, and the verdict on this ground should be in favor of the will."

The position is, that the instruction is not applicable to the facts in this case, and that the rule therein announced only applies when the defendants charged with undue influence are of kin to the testator. The law does not, however, in our opinion, make any such distinction, but applies alike to a will whose execution is procured by the undue influence of a friend, as when procured by the undue influence of a child or wife. [1 Redfield on the Law of Wills, *527; Elliott's Will, 2 J. J. Marshall, 340.] And in order to invalidate a will upon that ground, such influence "must not be the influence of affection and attachment; it must not be the mere desire of gratifying the wishes of another, for that would be a very strong ground in support of a testamentary act; further, there must be proof that the act was obtained by coercion; by importunity that

could not be resisted; that it was done merely for the sake of peace; so that the motive was tantamount to force or fear." [Williams on Executors (7 Am. Ed.), 58; McFadin v. Catron, 138 Mo. 218; Riley v. Sherwood, 144 Mo. 366; Carl v. Gabel, 120 Mo. 283; Jackson v. Hardin, 83 Mo. 175.]

The fact that defendant Carroll went for the attorney who wrote the will, that the testator was living with the family of Carroll at the time of its execution; that Mrs. Carroll receives a part of the testator's estate under the will, and that Carroll was appointed executor of his will, do not show or tend to show under the circumstances of this case that its execution was procured by him and his wife, by fraud, coercion or undue influence.

The testator was in full possession of his mental faculties at the time of its execution, and dictated its terms; he knew the objects of his bounty and what property and money he possessed; he was childless, his nearest relative being his sister, the plaintiff, who lived in the State of Arkansas; he was ill and unable to care for himself, and went to the house of Carroll and wife where they nursed him and administered to his wants, and although he gave to Mrs. Carroll a liberal part of his estate, undue influence in the execution of the will can not be inferred from such circumstances.

In the Matter of Gleespin's Will, 26 N. J. Eq. 523, it was said: "Influence gained by kindness and affection will not be regarded as 'undue' if no imposition or fraud be practiced, even though it induce the testator to make an unequal and unjust disposition of his property in favor of those who have contributed to his comfort and ministered to his wants, if such disposition is voluntarily made."

In Mackall v. Mackall, 135 U. S. 167, it is said: "It would be a great reproach to the law if, in its jealous watchfulness over the freedom of the testamentary disposition, it would

deprive age and infirmity of the kindly ministrations of affection, or of the power of rewarding those who bestow them."

As the instruction under consideration is in accordance with the views to which we have given expression, it is not erroneous, and the judgment should be affirmed. It is so ordered.

*Sherwood, P. J.,* and *Gantt, J.,* concur.