# SEIBERT et al., Appellants, v. HATCHER et al.

### Division Two, June 11, 1907.

1. **WILL CONTEST: Undue Influence: Confidential Relation.** An instruction that requires the undue influence that is sufficient to avoid the will to amount to over-persuasion, coercion or force, is. not inapplicable in a suit to set aside the will of a very old person, which gave the bulk of her property to her attending physician and nurse, when taken in connection with other instructions which told the jury that a will in behalf of persons standing in a confidential relation to testatrix is presumed in law to have been made under undue influence that must be overcome by proof, etc.

2. ——: **Statements of Testator.** Declarations made by testatrix, either before or after the making of the will, are admissible only as tending to show her mental capacity or the state of her feelings. It was not, therefore, error to refuse to permit a witness to testify as to what testatrix said about her moving from one town to another two years before her death and why she came to locate in the town where lived a principal beneficiary, a physician.

3. ——: **Admissions of Legatee.** What one of the legatees said about the property of testatrix, in the absence of the other legatees, is incompetent.

4. ——: ——: **No Tender of Proof.** Where contestants of the will ask a witness what certain of the legatees said about testator's property and the court refuses to permit the witness to answer, they should go further, if they assign the ruling for review, and show what they propose to prove, in order that the court may determine whether. or not it was material.

5. ——: **Statements Made to Legatee: Feeling Towards Relatives.** It is competent to permit a legatee, testator's nurse, to state declarations or statements of testatrix as to why she left the abode of a relative and built a house for herself, and as to misunderstandings between her and such relatives. That testimony is admissible as tending to show that testatrix's change of feeling towards her relatives was not brought about by such legatee, nor by anything she had said or done, but by indifference manifested by her relatives toward testatrix; and as it was offered to rebut prior testimony by testatrix's relatives that the said legatee had poisoned testatrix's mind towards them, it was both competent and pertinent.

6. ———: **Nurse and Physician: Undue Influence.** Testatrix was in full possession of her mental faculties at the time her will was executed and at the time she dictated its terms, and she knew the objects of her bounty, although she was eighty years of age. She had for many years been an invalid, and having no children and becoming estranged from her nieces and nephews, had left their abode, built a small house for herself, and for twelve years had been attended by a faithful nurse, an unmarried young woman, and by an attentive physician, to whom she gave three thousand dollars, each, and the residue of her estate to her relatives, naming them all. Her relatives had shown her very little kindness or attention prior to the execution of the will. She had become attached to the physician and nurse, and there is nothing to indicate that either by persuasion or otherwise they induced her to make legacies to them. *Held*, first, that kindness and affection are not regarded as undue influence; *second*, it is not strange that she gave a portion of her estate to the physician and nurse; and, *third*, the will should be upheld.

Appeal from Perry Circuit Court.—*Hon. Robert A. Anthony*, Judge.

AFFIRMED.

*Ed. Robb* and *W. H. Miller* for appellants.

Under the law and the evidence the verdict should have been for plaintiffs. Meek & Thornton, Exrs., v. Perry, 36 Miss. 245; Page on Wills, sec. 414; Hoope's Estate, 174 Pa. St. 195; Hartman v. Stricklin, 82 Va. 238; Taylor v. Wilburn, 20 Mo. 306; Harvey v. Sullens, 46 Mo. 153; Dingman v. Romine, 141 Mo. 466; Smith v. Henline, 174 Ill. 198; Rich v. Gilkey, 73 Me. 595. The case being one where a confidential relation was shown to exist and the burden of proof being on the proponents, instruction 4 for proponents, which required the jury to find that the undue influence to avoid the will must amount to overpersuasion, coercion or force, and that nothing short of that was sufficient, was erroneous and misleading. 1 Underhill on Wills, sec. 125 and sec. 152 and note 1; Higginbotham v. Hig-

ginbotham, 106 Ala. 314; Gay v. Gillilan, 92 Mo. 261.; Dingman v. Romine, 141 Mo. 474. The court erred in admitting evidence over the objection of plaintiffs and excluding evidence offered by them. Thompson v. Ish, 99 Mo. 160; Hughes v. Rader, 183 Mo. 630; Gordon v. Burris, 141 Mo. 602; Von DeVeld v. Judy, 143 Mo. 368; Wall v. Dimmitt, 72 S. W. 300; 1 Underhill on Wills, sec. 163; Milton v. Hunter, 76 Ky. 163; Jackson v. Hardin, 83 Mo. 186; Armstrong v. Farrar, 8 Mo. 451; 29 Am. and Eng. Ency. Law, 113; Page on Wills, sec. 425; Coghill v. Kennedy, 119 Ala. 641; Robinson v. Robinson, 203 Pa. St. 437; Langford's Estate, 108 Cal. 608; Crocker v. Chase, 57 Vt. 419; Higginbotham v. Higginbotham, 106 Ala. 314; Miller's Estate, 179 Pa. St. 645; Penett v. Penett, 184 Pa. St. 131; Wallis v. Luhring, 134 Ind. 477.

*John V. Noell* and *Wilson Cramer* for respondents.

(1) Instruction 4 given by the court at the request of proponents, declares the law as to what it takes to constitute undue influence, as it has been repeatedly declared by the Supreme Court of this State. Lorts v. Wash, 175 Mo. 505; Jackson v. Hardin, 83 Mo. 185; Dausman v. Rankin, 189 Mo. 703; Carl v. Gabel, 120 Mo. 296; McFadin v. Catron, 138 Mo. 219; Sehr v. Lindeman, 153 Mo. 289. (2) Instruction 6 given for defendants told the jury that the law presumed undue influence on the part of Dr. Hatcher and Miss Ella Statler until such presumption was overcome by proof rebutting the same; and instruction 1 given for plaintiffs told the jury that the burden of proof was on the defendants to show that at the time of the execution of the will the testatrix was of sound mind and memory, and that the will was not the result of undue influence. (3) Instruction 1, given on behalf of proponents, is sustained by Pratte v. Coffman, 33

Mo. 71. (4) Instruction 2 on behalf of proponents is supported by Gordon v. Burris, 153 Mo. 223. (5) Instruction 3 is sustained by Gordon v. Burris, 153 Mo. 231. (6) Instruction 5 is supported by the following cases: Bush v. Bush, 87 Mo. 480; Gibson v. Gibson, 24 Mo. 227; Jones v. Roberts, 37 Mo. App. 181; Rule v. Maupin, 84 Mo. 590; Spoonemore v. Cables, 66 Mo. 579. (7) Appellants say that the trial court should have permitted J. H. Kiesler to testify as to what Dr. Hatcher, one of the proponents, said about Mrs. McLane's property. What they complain of is, that the trial court sustained an objection to the following question propounded to this witness by counsel for contestants: "Before the making of this will which you witnessed, did you have any talk with Dr. Hatcher about Mrs. McLane's property?" In the first place, the court was justified in sustaining the objection to this question on the ground that the statements or admissions of one legatee made in the absence of the other legatees are inadmissible in a will contest. Schierbaum v. Schemme, 157 Mo. 17; Von De Veld v. Judy, 143 Mo. 368; Underhill on Ev., sec. 67; 1 Greenl. Ev. (14 Ed.), sec. 174; Freeman on Cotenancy and Part. (2 Ed.), sec. 169; 9 Am. and Eng. Ency. Law, 343; 11 Ib. 157; Thompson v. Thompson, 13 Ohio St. 356; O'Connor v. Madison, 57 N. W. 107. In the next place, the question was vague, general and indefinite, both as to time and the subject-matter of the question. The question fixes the time as before the making of the will, but does not say how long before; neither is the question limited to property bequeathed by the will, nor does it say what property. (8) Threats and previous difficulties between a witness and a party to a suit are admissible as tending to prove ill-feeling and bias of the witness against such party and thereby lessening the credibility of such witness. State v. Jones, 106 Mo. 302; People v. Brooks, 30 N. E. 189; Schultz v.

Railroad, 89 N. Y. 242; Gale v. Railroad, 76 N. Y. 594; Tucker v. Welsh, 17 Mass. 160; Martin v. Barnes, 7 Wis. 239; Stewart v. Kindel, 25 Pac. 990; State v. Dee, 14 Minn. 35; State v. Collins, 33 Kan. 77.

BURGESS, J.—This is a statutory proceeding to contest and set aside the last will of Emeline McLane, who died on the 26th day of October, 1903, the will having been executed on the 21st day of the preceding January.

Plaintiffs are the collateral kindred and the residuary legatees under the will of the testatrix. The petition, after averring the execution and probate of the will in question, alleges:

"That by the terms of said pretended will William H. Hatcher is made the beneficiary to the amount of three thousand dollars; and that Ella M. Statler is made a beneficiary therein to the amount of three thousand dollars; that neither William H. Hatcher nor Ella M. Statler was of kin to the said Emeline McLane, deceased.

"Plaintiffs now charge that at the time of making said will, to-wit, January 21, 1903, the said Emeline McLane was very old, being more than eighty years of age, and was in feeble health, as well as in a feeble state of mind; that she had been sick and bed-ridden for a number of years prior to the execution of the said pretended will; that she had not sufficient mental capacity to make and execute a will as provided by law; that by reason of her extreme old age, bed-ridden condition, feeble health and mental condition she was easily imposed upon and influenced; that said will, as prepared and admitted to probate, is not in fact the will of said Emeline McLane, deceased, but was produced and brought about and caused to be executed by the undue influence and over-persuasion of the said William H. Hatcher and Ella M. Statler, the

former being the physician in charge and the latter the nurse, one or the other, or both of them, who used their influence for the purpose of procuring the execution of said will with a view of making themselves beneficiaries therein to the exclusion of those who were close of kin and entitled as a matter of law to hold said property.

"So these plaintiffs charge that the writing which was probated as and for the last will and testament of the said Emeline McLane was not in fact her will."

The answer alleges affirmatively that the testatrix was of sound and disposing mind and memory, and denies that the execution of the will was procured by the exercise of undue influence or over-persuasion of defendants.

The will in question sought to be annulled and set aside, is as follows:

"Know all men by these presents: That I, Emeline McLane, of the county of Perry and State of Missouri, being feeble of body, but of sound and disposing mind and memory, do hereby make, publish and declare this to be my last will and testament.

"I. It is my last will and desire that after my death all my just debts, including funeral expenses, be paid out of my estate.

"II. As a token of my friendship and esteem for William H. Hatcher, M. D., of Perryville, Missouri, and by way of grateful appreciation of the services rendered and kindness shown me by him in the past, I hereby give him and bequeath to him three thousand dollars, which I require the executor of my estate to pay him as soon as practicable after my death.

"III. I give and bequeath to my beloved grand-niece by marriage, Ella M. Statler, of Perry county, Mo., three thousand dollars, which I require my execu-

tor to pay to her as soon as practicable after payment of the above mentioned legacy to William H. Hatcher.

"IV. I give and bequeath all the rest and residue of my estate, real, personal and mixed, to the following named beloved relatives of myself and my deceased husband, to be equally divided between them, share and share alike, to-wit: Mattison Price, Otho Price, Richard B. Price, Thomas F. Price, Joseph C. Price, William H. Seibert, Eulilie Hamilton, George A. McLane, Alpha Dudenbostel, and the two surviving children of Henry A. Price, deceased, Blanche Price and Harry Price, said two children to have jointly one share of my estate, equal to that given in this, the fourth clause of my will, to each of the persons mentioned in this clause, prior to the mention of said children.

"V. I hereby nominate and appoint the public administrator of Perry county, Mo., whoever he may be at the time of my death, to be the executor of this my last will and testament.

"VI. I hereby expressly revoke any and all wills heretofore made by me.

"In witness whereof I hereunto set my hand and seal this 21st day of January, A. D. 1903.

"EMELINE McLANE.  (Seal.)

"We attest the above and foregoing will by subscribing our names hereto as witnesses in the presence of Emeline McLane, the testatrix, this 21st day of January, A. D. 1903.

"JOHN H. KIESLER,
WM. A. DIFANI."

A trial by jury of the issues resulted in the following verdict:

"We, the jury, find the writing produced in evidence is the last will and testament of Emeline McLane, deceased."

The judgment of the court accorded with the verdict, from which judgment, after an unavailing motion for a new trial, plaintiffs appeal.

The testatrix, Emeline McLane, was a childless widow, about eighty-four years of age at the time of her death on October 26, 1903. Prior to 1891 she lived with her relatives in the country, first with one, and then with another. The last relative with or near whom she lived was her nephew, Otho Price, to whose house she built an addition, and lived there. Becoming dissatisfied, she built a house in the village of Brazeau, in Perry county, and established a home of her own, where she was living in the year 1891. She was then about seventy-one-years of age, and had for some time been a cripple, suffering from caries of the bone in one of her knees, which caused her limb to be drawn up so that she could not walk, but was otherwise in good health. Her infirmity made it necessary that she have a constant attendant, and, after trying several girls, she employed the defendant, Ella Statler, a distant relative by marriage, who went to live with her as housekeeper and nurse on the 1st day of October, 1891, she being then twenty-four years of age, and remained with her continuously up to the old lady's death in 1903, or for a period of about twelve years.

In 1892, the defendant Wm. H. Hatcher, who had just begun the practice of medicine, located at Brazeau, to practice his profession, and continued for some time to be the only physician in the neighborhood. During the fall of that year he called to see Mrs. McLane, professionally, and continued from that time on to be her attending physician until he sold out his practice to Dr. Seibert, a young physician who came there about 1901. Dr. Hatcher, before leaving, took Dr. Seibert to the residence of Mrs. McLane, and introduced him to her as his successor in the practice. After practicing at another place for a little time, the defendant

Hatcher located at Perryville, the county seat, to practice his profession. Some time after he left Brazeau, Mrs. McLane, who was unwilling to submit to treatment at the hands of the young, inexperienced physician at that place, concluded to move to Perryville, where she might have the assistance of experienced and competent physicians, not knowing at the time that Dr. Hatcher contemplated locating there. After establishing a home at Perryville, she again had Dr. Hatcher to attend to her ailment, and he continued to be her physician during the remainder of her life.

There was abundant evidence to the effect that the testatrix was a woman of strong character and mentality, thoroughly competent to attend to her own business affairs. Of the numerous witnesses introduced by the contestants, there was but one, Benjamin Knox, who intimated that Mrs. McLane was ''childish.'' He said, ''I don't pretend to say that she was childish so that she didn't control herself; she was of a childish disposition when things didn't go right.'' The witness evaded every question by which it was attempted to elicit from him any information or opinion relative to Mrs. McLane's ability and competency to attend to her business affairs.

Defendant's witness John H. Kiesler, a banker of Perryville, who was one of the witnesses to the will, testified that the will was read twice in his presence before it was signed. Part of his testimony, in narrative form, is as follows:

''When the will was read the second time, Mrs. McLane nodded her head at the different provisions, and said it was as she wanted it. . . . . Mr. Difani and I signed our names to the will in the presence of Mrs. McLane, and we both saw her sign the will. I thought Mrs. McLane's mind was all right at that time. Before Mr. Difani came she talked about her trip from North Carolina to Perry county when she was a girl,

and her mind seemed clear. I had known her for about ten years before that. I had done her insurance business. I always thought she was all right in her mind. She was clear-headed and her memory was good; she remembered me although I hadn't seen her but perhaps in a year or so between times. I don't think her mind at the time of making this will was a bit less clear than it had always been. The business she had with me she attended to herself." Witness testified that Dr. Hatcher was not present at the time the will was made or signed, but he said that Ella Statler was present the first time the will was read. He further testified: "After I witnessed the will Mrs. McLane was talking about the will being made, and that she left most of it to Dr. Hatcher and Miss Statler. She said that her relatives hadn't treated her right; that was why she was giving it to Miss Statler and Dr. Hatcher. This was after the will was executed. She did not intimate in what way her relatives mistreated her, only she said that Otho Price had tried to get her to send Miss Statler away, and that she wouldn't know what to do without her, she missed her."

Wm. A. Difani, the other witness to the will, testified that he was the assessor of Perry county; that in assessing Mrs. McLane's property she always attended to the matter herself, in a business-like way, and that she seemed to be an intelligent old lady. He said: "In regard to her business transactions, I think she was clear-headed and capable of attending to them. I didn't see any difference in the condition of her mind the evening she made the will from what it had been at former times."

John V. Noell, the attorney who wrote the will of Mrs. McLane, and who was one of defendants' counsel in the trial of this suit, testified as to the circumstances of his employment to write the will and the condition of the mind and memory of the testatrix at the

time. He said: "I think she had a great deal more than the ordinary intelligence. Her memory was fine. . . . . I made a memorandum of what Mrs. McLane wanted to put in her will. I put down what she directed. While Mrs. McLane was dictating what she wanted put in her will there was nobody in the room. Miss Statler met me at the door, and as soon as I got in there and sat down she retired, went into the back room and when the old lady told me what she wanted there was nobody in the room. Dr. Hatcher was not there at any time. Ella Statler was not in the room at any time when the old lady was dictating. After I had prepared the notes I read them over to the old lady, and she said, 'That is just the way I want it.' That evening before Mr. Difani arrived, I read the will over to her and asked her if that will represented just what she wanted, and she said that it did. We had some talk about the legatees and the distribution of her property. She said that she wanted it divided equally, that is, the remainder. She spoke in terms of highest regard and esteem of Dr. Hatcher and Miss Ella Statler. She said that Dr. Hatcher had been her family physician for quite a long time, and that he had done her a great deal more good than any person—that Dr. Hatcher had been so kind to her, and had done some things that his professional duties didn't call on him to do, and that Ella had virtually made a sacrifice of her life—had been with her twelve years—and that she had done more for her than her own child would have done, and she looked upon her and Dr. Hatcher as being her mainstays. The old lady seemed to be in good health at that time."

Both Dr. Hatcher and Ella Statler testified as to their relations with the testatrix, and each disclaimed having made any suggestion whatever to her respecting her will or as to what it should contain. Regard-

ing the circumstances of the execution of the will, Dr. Hatcher testified as follows:

"Q. Now, then, Doctor, I will ask you to state if you remember or know anything about the circumstances of Mrs. McLane having executed this will in controversy? A. I certainly do know it; I know it was executed. The first that I knew of the will, I was up to see the old lady one morning, and after I had prescribed I was sitting talking to her, and she said, 'Doctor, I have been thinking of making a will in favor of you and Ella,' and I said, 'Aunt, I don't want to talk to you about this and I won't discuss the matter with you,' and right there it stopped. I had nothing to do with it only as to the witnesses—seeing Mr. Noell and witnesses.

"Q. I mean so far as the old lady's mind was concerned; by way of suggesting what she should do? A. No, sir.

"Q. If you summoned Mr. Noell, state to the jury just what occurred and how you came to summon Mr. Noell. A. Three or four days after she had spoken to me about making this will I was talking with her and—anyway she discussed the matter, and—I don't remember, it was a week, a week's time—and she told me that she had decided to make that will and would like to—wanted to get a lawyer and wanted to know what I thought about the lawyer. I told her Mr. Noell, I thought, was a good lawyer. She asked me if I would see him and send him up. I told her I would, and that ended that conversation."

It appears that some time prior to the making of the will in question the testatrix had executed a will by which, according to the testimony of some of the witnesses, she bequeathed all her property to the relatives named as the residuary legatees in this will. As to the destruction of the old will, witness Noell testified that after writing the last will of the testatrix,

and the same evening it was executed, he asked her what should be done with the old will. "Mrs. McLane replied, 'I don't know.' I said, 'I guess it is no good; it had just as well be destroyed.' She told Ella Statler to stick it in the stove and burn it up, and she did it in the presence of myself and the old lady."·

There was much testimony introduced by parties plaintiff and defendant respecting the testatrix's state of feeling toward some of her relatives, her transactions with and treatment by them, from all of which it would appear that the old lady did not believe that she had been treated properly. Several witnesses testified as to a certain note for about two hundred dollars which she stated to them had been owing to her by Otho Price, and that after paying part of the note he asked her for it one day in order to compute the interest thereon, and that he never afterwards returned it to her. The evidence also tended to show that she left the society of her relatives and moved to the village of Brazeau because she desired peace.

The evidence on the part of plaintiffs largely related to the antipathy of Ella Statler to certain relatives of testatrix, particularly Otho Price, and as to various gifts by the testatrix to Miss Statler, among which were a deed to her house at Brazeau, worth about six hundred dollars, and a note for seven hundred dollars owing by Miss Statler's brother to Mrs. McLane. But there was little or no evidence tending to show, or from which it could be inferred, that either Miss Statler or Dr. Hatcher had or tried to exert any undue influence over the mind of the testatrix.

At the request of the proponents of the will, and over the objection and exception of the contestants, the court instructed the jury as follows:

"1. The court instructs the jury that, if they find from the evidence that Emeline McLane, the testatrix,

signed the paper which has been offered in evidence in this cause as her last will and testament, and that John H. Kiesler and William A. Difani attested the same by subscribing their names thereto in the presence of the testatrix and at her request, and that the testatrix was at the time of sound and disposing mind, then the jury should find that said paper is her last will and testament, unless they shall further find that the execution thereof was brought about by the exercise of undue influence.

"2. The words 'sound and disposing mind and memory,' as used in these instructions, mean a mind sufficient to enable a testatrix to understand what business she was engaged in while she was making and executing a will; also to enable her to know who were the natural objects of her bounty; and her relation to them and what property she had and the disposition she desired to make of it. And if the jury shall find from the evidence that testatrix, Emeline McLane, at the time she executed the instrument offered in evidence as her last will, had sufficient mind and memory to understand that she was engaged in making a will and knew what property she had, knew who her relatives were, and comprehended the claims that they had on her bounty and understood what disposition she wanted to make of her property, then she possessed a sound and disposing mind and memory, and sufficient capacity to make a valid will.

"3. The court instructs the jury that if the testatrix, at the time of the execution of the will in question in this case, had a sound and disposing mind, she had a right to dispose of her estate by will as she chose, even to the entire exclusion of those who but for the will would have been the heirs of her estate; and the question to be determined by the jury in this case is not whether or not the disposition of her estate made by the testatrix in her will is appropriate or in the opin-

ion of the jury just; but simply whether the paper propounded as her will be or be not the last will and testament of the testatrix.

"4. The words 'undue influence' as used in these instructions mean such influence as amount to overpersuasion, coercion or force, overpowering and destroying the free agency and will-power of the person upon whom it is used, and no amount of influence or advice or persuasion which comes short of such effect will amount to undue influence. The mere influence of affection or attachment or the desire of gratifying the wishes of one beloved, respected and trusted by the testator, does not constitute undue influence within the meaning of the law.

"Hence, even if the jury believe from the evidence that co-defendants, William H. Hatcher and Ella M. Statler, or either of them at and prior to the time of the execution of the will in question, exercised an influence over the testatrix whereby she was induced to dispose of her estate in the manner she did in her will, yet if the jury believe from the evidence that such influence was gained over the testatrix by kindness and friendly attention to her, and that it was exercised solely as a persuasive inducement to the making of the said will and the disposition of her property and not in such a way as to destroy her freedom of will to such extent that she could not exercise it in accordance with her own judgment, and that she was not thereby constrained to make a will and to make such a disposition of her property as was against her actual will, then such influence so exercised is not in contemplation of law undue influence, and is insufficient to invalidate said will.

"5. The court instructs the jury that any and all of the declarations made by the testatrix, Emeline McLane, both before and after the execution of the will in

question in this case, are only admissible as evidence of the condition of the mind and affections of the testatrix at the time they were made, and cannot be considered by the jury as proving or tending to prove the truth or the facts stated in such declarations.

"6. The court instructs the jury that a will in favor of persons standing in close confidential relations to the testator is presumed in law to have been made under undue influence exercised by such beneficiaries, but that this presumption of law may be rebutted and overcome by proof; and if the jury shall be satisfied from the evidence in this cause that neither Dr. Wm. H. Hatcher, the attending physician, nor Ella Statler, the nurse, exercised an undue influence upon the testatrix, Emeline McLane, to induce her to dispose of her property as provided in the writing propounded as her will then the jury should find that said writing is the will of Emeline McLane."

On behalf of the contestants, and over the objection and exception of the proponents, the court gave the following instructions:

"1. The jury are instructed that when a will is made in favor of one's physician or nurse to the total or partial exclusion of the lawful heirs, the burden of proof is on the defendant to show that the deceased was of sound mind and memory at the time of the execution of the will, and that it was not the result of undue influence. You are therefore instructed in this case that, if from the evidence you find and believe that defendant, William H. Hatcher, was the attending physician, and the defendant, Ella Statler, was the nurse of deceased, Emeline McLane, and that one or the other or both of them had occupied this position for a number of years immediately prior to her death, and that each of them is a large beneficiary of the will of Emeline McLane, deceased, then the law presumes that said will was procured by undue influence exercised by

defendants over the mind of the testator, and unless they have disproved such influence by a preponderance of the evidence your verdict will be that the writing offered in evidence is not the last will and testament of said Emeline McLane, deceased.

"2. The court instructs the jury that fraud and undue influence need not be proven by direct and positive proof, but it may be established by facts and circumstances inconsistent with honesty and fair dealing, and in this case you are instructed that, if from all of the facts and circumstances in evidence, you believe and find that said will of Emeline McLane, deceased, was procured by undue influence exercised over her by either one or both of the defendants then your finding will be that the paper introduced is not the last will and testament of the deceased. In determining whether or not the said writing was procured by undue influence you should take into consideration all the facts and circumstances proven in this case, together with the relation of the parties to each other as well as the age, physical and mental condition of the testatrix.

"3. The court instructs the jury that you are the sole judges of the credibility of witnesses and the weight to be given to their testimony and in determining the weight you will attach to any witness's testimony, you should take into consideration his or her interest, if any, in the result of the suit, his or her relation to the parties in interest, his or her demeanor on the witness stand, together with the probability or improbability of the statements made, and in this connection you are instructed that if you believe any witness has willfully sworn falsely to any material fact in issue, then and in that event you are at liberty to disregard any part or all of any such witness's testimony."

It is conceded by the contestants that the testatrix had mental capacity sufficient to satisfy the law

for the purpose of the execution of her will; but they claim that the condition of her mind should be considered in connection with other facts in the case as tending to show the probability of this will having been procured by the efforts of Dr. Hatcher or Miss Statler, or by their united efforts.

Plaintiffs complain of instruction number 4, given at the instance of the proponents of the will, and contend that it is erroneous and misleading for the reason that, while the confidential relations which existed between the testatrix and Dr. Hatcher and Miss Statler raised the presumption of undue influence, which would be fatal to the will unless rebutted by proof of free deliberation and spontaneity on the part of the testatrix, and good faith on the part of these legatees, the instruction required that undue influence such as was necessary to avoid the will must amount to over-persuasion, coercion or force, and that nothing short of that was sufficient. It is argued that, while the rule announced by the instruction might be correct as an abstract proposition of law, applicable to general conditions, yet, as applied to the facts and the situation of the parties in this case, it was erroneous and calculated to mislead the jury. We are unable to admit this contention, or to hold that the facts disclosed by the record removes this case from the operation of the rule announced generally, and especially by this court, in suits to set aside wills upon the ground of procurement by undue influence. [Jackson v. Hardin, 83 Mo. 175; Myers v. Hauger, 98 Mo. 433; Thompson v. Ish, 99 Mo. 160; Tibbe v. Kamp, 154 Mo. 545.] When this instruction is read in connection with instruction number 6 given for the defendants, and instruction number 1 given in behalf of contestants, upon the same subject, there can be no doubt that the jury was fully, clearly and properly instructed as to the meaning of "undue influence," which, as defined in the cases

cited, is influence such as to amount to over-persuasion, coercion or force, destroying the free agency and will-power of the testator.

It is insisted that the court erred in not permitting Frank Grant, a witness for plaintiffs, to testify as to what Mrs. McLane said about her moving to Perryville and why she came to locate there. There was, we think, no error in refusing to allow the witness to answer the question, as declarations made by the testatrix, either before or after the making of the will, were only admissible as tending to show her mental capacity or the state of her feelings (Gibson v. Gibson, 24 Mo. 227; Spoonemore v. Cables, 66 Mo. 579; Rule v. Maupin, 84 Mo. 589; Bush v. Bush, 87 Mo. 480); and whatever might have been said by the testatrix as to why she moved to Perryville was foreign to any issue in this case, and would not tend to show her mental capacity or the state of her feelings toward the parties to this suit. It was, therefore, immaterial and inadmissible.

Plaintiffs also contend that the court erred in not permitting J. H. Kiesler to testify as to what Dr. Hatcher, one of the proponents, said about Mrs. McLane's property; and in not permitting W. A. Difani to testify as to what Miss Statler, the other proponent, and Dr. Hatcher said about Mrs. McLane's property; and in refusing to permit Frank Grant to give any testimony relative to what Miss Statler and Dr. Hatcher said about said property, or as to what Miss Statler said to him about the gift of Mrs. McLane to her of the house at Brazeau and some gifts in money.

The question asked J. H. Kiesler was this: "Before the making of this will, which you witnessed, did you have any talk with Dr. Hatcher about Mrs. McLane's property?" The objection to the admission of such testimony was upon the ground that it was incompetent, and that the admissions of one of the legatees under the will, in the absence of the others, were in-

competent and inadmissible. This subject yas fully discussed, and the authorities reviewed by Judge VAL-LIANT in the case of Schierbaum v. Schemme, 157 Mo. 1, and the conclusion reached was that the admissions made by one devisee cannot be given in evidence against another devisee claiming under the same will. The same or similar questions were asked witnesses Difani and Grant, and, for the reasons indicated, the objections thereto were properly sustained by the court. But the action of the court in refusing to permit answers to the questions asked was proper for another reason: "The plaintiffs should have gone further, and stated what they proposed to prove, so that the court could determine whether it was material. The case might be reversed on the naked refusal to permit an answer to this question, and on retrial it might appear that the matter elicited was wholly immaterial and incompetent." [Jackson v. Hardin, supra, and subsequent cases.]

It is claimed by plaintiffs that the court erred in admitting the testimony of Ella Statler, Dr. Hatcher and several other witnesses as to declarations or statements of Mrs. McLane as to why she left Otho Price's and built a house at Brazeau; and as to misunderstandings or disputes over eggs, chickens and a horse, which had taken place seventeen or eighteen years before the execution of the will and some years before she moved to Brazeau. As to the first of these two assignments of error, defendants insist that the evidence was pertinent and material as bearing upon Mrs. McLane's feelings toward her relatives, and as rebutting the contention of contestants that the defendant, Ella Statler, assumed mastery and control over Mrs. McLane and coerced her into an abandonment of her relatives. It was admissible as tending to show that Mrs. McLane's change of feeling towards these relatives was was not brought about by Ella Statler, nor by anything

she had said or done, but was the result of indifference manifested by her relatives towards the testatrix.

Ben Knox, a witness for contestants, had previously testified to a difficulty between Miss Statler and Otho Price, and stated that after this difficulty, which occurred prior to 1900, Miss Statler had control of Mrs. McLane. He also testified that in a conversation had with Mrs. McLane she told him she wanted her property to go to her nephews and nieces, but that while she was talking she glanced over her shoulder to see if Miss Statler was in hearing, and that it appeared to witness that Mrs. McLane did not want Miss Statler to hear anything she said to him.

Miss Barbara Price, another witness for the contestants, had previously testified that Mrs. McLane had told her that Miss Statler was good while she (Mrs. McLane) did just as Ella wanted, and that she was not allowed to have her own people, the Prices, come to see her.

Della Price, another of contestants' witnesses, had previously testified that on the occasion of a visit by her to Mrs. McLane, her aunt, the latter told her that the door of her home was bolted against her relatives by Ella, and that she had to put up with this to keep Ella in good humor.

Mrs. Carrie Barber, another witness for contestants, had previously testified that her aunt, Mrs. McLane, had told her that Ella Statler would not allow her, witness, to come to see her. Witness also testified that Ella Statler took her aunt away from her, and that her aunt was very near and dear to her.

The testimony of other witnesses for contestants was of a like character. Under the circumstances, the court did not err in admitting the testimony for defendants to which the contestants object.

As to the second of the foregoing assignments of error, respecting evidence in relation to disputes over

eggs, chickens and a horse, such evidence by proponents was in reply to evidence on the part of contestants that there was never any falling out or trouble between any of the Prices and Mrs. McLane, and it was admissible as tending to show that Ella Statler did not cause the estrangement between Mrs. McLane and her collateral kindred.

Plaintiffs complain of several other rulings of the court respecting the admission or exclusion of testimony, all of which have been considered, and we have been unable to see wherein such rulings were erroneous.

Defendants assumed the burden of proving that the will was not the result of over-persuasion, coercion or force, overpowering and destroying the free agency and will-power of the testatrix, but that it was the offspring of a free and unhampered mind. The evidence to this effect was practically all one way. The testatrix was in full possession of her mental faculties at the time of her will's execution and at the time she dictated its terms, and she knew the objects of her bounty. She had for many years been an invalid, and Ella Statler, at the request of the testatrix, had gone to live with her, and had nursed and cared for her for twelve years ——up to the time of her death. Dr. Hatcher had treated her professionally a number of years, during which time, by reason of his kindness and close attention, she became quite attached to him. Prior to the execution of her will her relatives had shown her very little kindness or attention and it is not strange, under the circumstances, that she should have given a portion of her estate to Dr. Hatcher and Miss Statler, her faithful attendants, upon whom she had leaned for so many years.

In Campbell v. Carlisle, 162 Mo. 1. c. 647, there is quoted with approval the following from In the Matter of Gleespin's Will, 26 N. J. Eq. 523: "Influence

gained by kindness and affection will not be regarded as 'undue' if no imposition or fraud be practiced, even though it induce the testator to make an unequal and unjust disposition of his property in favor of those who have contributed to his comfort and ministered to his wants, if such disposition is voluntarily made."

In Mackall v. Mackall, 135 U. S. 1. c. 112, it is said: "It would be a great reproach to the law if, in its jealous watchfulness over the freedom of testamentary disposition, it would deprive age and infirmity of the kindly ministrations of affection, or of the power of rewarding those who bestow them."

Finding no reversible error in the record, the judgment is affirmed. All concur.