L. H. WEBER et al. v. JOHN STROBEL and MOLLY STROBEL, Appellants.

Division Two, July 15, 1911.

1. **WILL CONTEST: Demurrer to Evidence: Subsequent Introduction of Evidence.** Where the proponents of the will, after an instruction in the nature of a demurrer to the contestants' evidence was overruled, introduced testimony in support of the will, they waived the right to have contestants' evidence alone adjudged insufficient to overthrow the will, but took the risk of aiding plaintiffs' case with their own testimony, and on appeal the entire evidence to support the verdict will be considered.

2. ————: **Substantial Evidence.** Testator's parents, wife and only child had died, and his closest blood kin were uncles, aunts and cousins, and they are the contestants of his will.

Weber v. Strobel.

He had been a successful grocery merchant, sold his business to the devisee, accepted a clerkship in the store of devisee, who paid him wages, and in time paid him the purchase price for the stock of goods, etc. Testator owned the three-story building in which the grocery business was conducted, and lived in the second and third story with devisees—husband and wife. She waited on his wife in her confinement, and upon him in his sickness, and contestants rarely visited him, whereas he and devisees had been close friends for ten years. Testator managed his own business, was of sound mind, and at the age of 37 years, while at work in the store, asked a lawyer to draw up his will, telling him how he wanted to dispose of his property. The lawyer drafted it, brought it to him, he read it, said it was as he wanted it, and signed it in the presence of witnesses. About a month later, after a sickness covering much of that time, he was taken to a hospital, and as he left handed to devisee a package of papers, saying, "These are for you to take care of." He remained in the hospital for six weeks, and during that time his relatives had frequent opportunity to visit him, and did, and he made no effort to revoke the will. After his death the package of papers was opened, and the will, sealed up, was found therein. *Held*, there is no substantial evidence of undue influence, and the verdict of the jury setting the will aside on that ground cannot stand.

4. ——: ——: ——: **Evidence: Statement of Devisee of Desire to Get Testator's Property.** Testimony of a witness that devisee said at one time, before the death of testator's child and after his wife's death, that he would like to get testator's child, so he could get on the good side of testator and get his property, is of the slightest, if any, probative force of undue influence; especially where the witness himself said he did not attach any importance to the remark and regarded it as a joke.

5. ——: ——: ——: ——: **Unwillingness to Accept Rent Money.** Testimony of a witness to the effect that testator told him to keep the rent money, that if she paid it to him the devisee would get it, and that testator did not entertain a good opinion of the devisee, is of no probative force as showing undue influence on the part of said devisee. Such testimony was not competent for any purpose on the issue of undue influence, except to show the testator's feelings and affections for the object of his bounty.

6. ——: **Undue Influence: Kindness: Friend.** Any degree of influence over a testator acquired through kindness and affection, can never constitute undue influence within the meaning of the law; and this principle applies to a friend who has been made the beneficiary in a will, as well as to a wife or child.

7. ————: ————: **Burden.** The burden of establishing undue influence rests upon the contestants of the will.

8. ————: ————: ————: **Confidential Relations: Theory at Trial.** The facts of this case do not establish a confidential and fiduciary relation between testator and devisees, and therefore the burden does not shift to devisees to prove that the will was not the product of undue influence. Besides, the case was not tried on that theory in the lower court.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

REVERSED AND REMANDED.

*Charles H. Brock* and *Silver & Brown* for appellants.

(1)   There is no substantial evidence in the record of this case that the testator's will was the product of undue influence, and the court should have sustained the demurrer to respondents' evidence.   Teckenbrock v. McLaughlin, 209 Mo. 533; Campbell v. Carlyle, 162 Mo. 634; Conner v. Skaggs, 111 S. W. 1132; Sehr v. Lindeman, 153 Mo. 276; Tulbright v. County, 145 Mo. 432; McFadin v. Catron, 138 Mo. 197; Riley v. Sherwood, 144 Mo. 354; Von de Veld v. Judy, 148 Mo. 348; Berberet v. Berberet, 131 Mo. 399; Cash v. Lust, 142 Mo. 630; DeFoe v. DeFoe, 144 Mo. 458; Hughes v. Rader, 183 Mo. 630; Jackson v. Hardin, 83 Mo. 185; Brinkman v. Rueggesick, 71 Mo. 553; Tibbe v. Kamp, 154 Mo. 543; Morton v. Paxton, 110 Mo. 456; Myers v. Hanger, 98 Mo. 433; Weston v. Hanson, 111 S. W. 44; Appleby v. Brock, 76 Mo. 685.  (2)  The testimony of Vogel as to the alleged statement of one of the two legatees, Strobel, to the effect that he, Strobel, would like to get hold of testator's child and get on the good side of testator, and get the property, is not competent proof as against the other co-legatee, Mrs. Strobel.   Where there is no allegation of a conspiracy between both of the two legatees to concoct a will in

favor of both legatees, it is not competent to prove the admission of one of the two legatees made prior to the execution of the will, not in the hearing of the other legatee, or of the testator, especially where the one making the statement is not shown to have had anything to do with the execution of the will. Schierbaum v. Schermme, 157 Mo. 1; Teckenbrock v. Mc-Laughlin, 209 Mo. 533. And such testimony, under the circumstances herein shown, has no weight as evidence. (3) The testimony of Mr. and Mrs. Gradel as to various statements of the testator prior to the execution of the will to the effect that testator did not think much of Strobel; and did not want to receive his rent money from them for fear that Strobel would get it; and that Strobel had not treated him right in some things, and other statements of testator relating to Strobel cannot be dignified as any evidence whatever of undue influence. Where there is an issue of mental incapacity or where such statements are made at the time of making the will, and therefore are a part of the *res gestae,* or where there is an issue of the affections of the testator, they may be received as evidence on that point, but they are not to be received or taken as a proof of the facts narrated. Teckenbrock v. McLaughlin, 209 Mo. 533; Schierbaum v. Schemme, 157 Mo. 1; Gibson v. Gibson, 24 Mo. 227; Cawthorn v. Haynes, 24 Mo. 236; Tingley v. Cowgill, 48 Mo. 291; Spoonemore v. Cables, 66 Mo. 579; Rule v. Maupin, 84 Mo. 587; Bush v. Bush, 87 Mo. 485; McFadin v. Catron, 120 Mo. 266; Crowson v. Crowson, 172 Mo. 702; Seibert v. Hatcher, 205 Mo. 83. (4) It is true that testator made his will in favor of appellants without mentioning respondents therein under the influence of his affection for them, and because of his lack of affection for respondents. It may be he wished, because of his attachment to appellants, to gratify what he believed to be their wishes. It may be that the appellants, by reason of the affection ex-

isting between them and testator, had some influence over him, but unless it is shown that such influence is unduly or unjustly exercised in procuring the will, these conditions are insufficient to overthrow the will. Hughes v. Rader, 183 Mo. 708; Jackson v. Hardin, 83 Mo. 185; McFadin v. Catron, 138 Mo. 138; Brinkman v. Rueggesick, 71 Mo. 553; Campbell v. Carlisle, 162 Mo. 646. (5)    The facts that the testator excluded his relatives and left his property to those who were not relatives to him by ties of blood are not sufficient to raise an inference of undue influence. Hughes v. Rader, 183 Mo. 630; Jackson v. Hardin, 83 Mo. 185. (6) This is not a case of confidential relations existing between appellants and testator like that of an attorney and his client, physician and patient, guardian and ward, priest and communicant, such as would shift the burden of proof upon the appellants to show the absence of undue influence by reason of the rule that such a relation raises a presumption of undue influence as described in: Tibbe v. Kamp, 154 Mo. 543; Campbell v. Carlyle, 162 Mo. 634; Mowry v. Norman, 204 Mo. 173.

*John S. Leahy* for respondents.

•   (1)   The jury is the sole judge of the credibility of witnesses. Wolff v. Campbell, 110 Mo. 114. Peremptory instructions should not be given, unless opposite party admits all facts, or they are established by documentary evidence, which he is estopped to deny. Mosby v. Com. Co., 91 Mo. App. 500; Hagan v. Railroad, 86 Mich. 615. A will contest is an action at law, and being such, the appellate court will not reverse the judgment because the jury found against the weight of the evidence, but will do so only when, on an examination of the testimony, no evidence is found to support the verdict or upon which it can be based. Roberts v. Bartlett, 190 Mo. 680. When

the plaintiffs make out a prima facie case, as was apparently done in this case, the defendants' demurrer at close of plaintiffs' case being overruled, the issues must go to the jury, although in the opinion of the court, the evidence of the defendants entirely overcomes that of the plaintiffs, and stands uncontradicted. The jury may not believe defendants' witnesses, and it is for them, and not for the court to pass upon the facts.  Gannon v. Gaslight Co., 145 Mo. 502; Dalton v. City, 173 Mo. 39; Gregory v. Chambers, 78 Mo. 294; Land Co. v. Ross, 135 Mo. 101; Huston v. Tyler, 140 Mo. 252; Gordon v. Burris, 141 Mo. 602; Wolff v. Campbell, 110 Mo. 114; Gibson v. Zimmerman, 27 App. 96.  Undue influence is a question of fact, and if there is any evidence, no matter how slight, it is proper to submit it to the jury.  Lay v. Ins. Co., 7 Mo. App. 566; Coudy v. Railroad, 85 Mo. 79; Hunt v. Railroad, 14 Mo. App. 160; Roddy v. Railroad, 104 Mo. 234; Gay v. Fielkemeyer, 64 Mo. App. 112; Kirk v. Sportsman, 48 Mo. 383; Moore v. Pieper, 51 Mo. 157; Reynolds v. Rodgers, 63 Mo. 17; Wynn v. Cory, 48 Mo. 346; Schultze v. Railroad, 32 Mo. App. 438; Lovell v. Davis, 52 Mo. App. 342; Charles v. Patch, 87 Mo. 450; Sonnenfeld v. Railroad, 59 Mo. App. 668; Mathews v. Elevator Co., 50 Mo. 149; Williamson v. Fischer, 50 Mo. 198; Holliday v. Jones, 59 Mo. 482; Moody v. Deutsch, 85 Mo. 237; Hadley v. Orchard, 77 Mo. App. 141; Tapley v. Herman, 95 Mo. App. 537; Carr v. Ubsdell, 97 Mo. App. 326; Morrow v. Car Co., 98 Mo. App. 351; Rosenbaum v. Gilliam, 101 Mo. App. 126; Bowen v. Lazalene, 44 Mo. 383; Smith v. Hutchinson, 83 Mo. 683; Patchin v. Biggerstaff, 25 Mo. App. 534; Baird v. Railroad, 146 Mo. 265; Zellars v. Water Co., 92 Mo. App. 107; Harvey v. Sullens, 46 Mo. 147; Hazell v. Bank, 95 Mo. 60.  (2)  The issue is will or no will, and a will that is shown by competent proof to be in fact the product of the undue influence of one devisee, out of several, is as much void as if it

was the product of the undue influence of all of them. Teckenbrock v. McLaughlin, 209 Mo. 533; Florey v. Florey, 24 Ala. 241; Davis v. Calvert, 25 Am. Dec. 282; Mahorner v. Hooc, 48 Am. Dec. 706; Arnold v. Gilbert, 3 Sandf. Ch. 531; Harris v. Clark, 7 N. Y. 242; Clemens v. Clemens, 60 Barb. 366; Brandt v. Brandt, 34 N. Y. Supp. 684. (3) When the testamentary capacity of the testator, and undue influence exercised upon him, are in issue, it becomes material to know what were his previous purposes, intentions, and state of mind; and statements made by him at, before, and after making the will in question, are competent evidence for these purposes. Thompson v. Ish, 99 Mo. 160; Von DeVeld v. Judy, 143 Mo. 348; Gordon v. Burris, 141 Mo. 602; Spoonemore v. Cables, 66 Mo. 579; Rule v. Maupin, 84 Mo. 587; Bush v. Bush, 87 Mo. 485; McFadin v. Catron, 120 Mo. 266; Crowson v. Crowson, 172 Mo. 702; Steadman v. Steadman, 14 Atl. 406; Fagan v. Dugan, 2 Redf. of Sur. 341; Reichenbach v. Ruddach, 127 Penn. 564. (4) If the jury are satisfied from the evidence, taken as a whole, that the will would not have been executed by the deceased but for the influence exercised over him by the devisee, they should find that the will was procured by undue influence, and was not his last will. Harvey v. Sullins, 46 Mo. 147; Crossan v. Crossan, 169 Mo. 631; Hughes v. Rader, 183 Mo. 630. (5) Ordinarily the burden of showing undue influence is on the party asserting it, an exception being the existence of confidential relations between the testator and the legatee, to whom is bequeathed subsequently all of the property. Tibbe v. Kamp, 154 Mo. 545; Mowry v. Norman, 204 Mo. 173; 8 Cyc. 564. Whenever the principal devisee or legatee occupied a confidential relation to the testator, the burden of proof is on him to show that the will was not procured by fraud or undue influence. Moore v. Spier, 80 Ala. 129; Waddell v. Lanier, 62 Ala. 347; Shipman v. Furniss, 69 Ala. 564;

Campbell v. Carlisle, 162 Mo. 634; Gay v. Gillian, 92 Mo. 250; Woerner on Administration (2 Ed.), par. 48. Where a confidential relation, such as principal and agent, existed between the testator and the beneficiary under the will, and continued to the testator's death, the presumption of undue influence arises, and requires affirmative proof to overcome it. Lyons v. Campbell, 88 Ala. 462; Higginbotham v. Higginbotham, 106 Ala. 314; Decker v. Waterman, 67 Barb. 460; Ranta v. Willetts, 6 Dem. Rep. 84; Jones v. Roberts, 37 Mo. App. 167; Campbell v. Carlisle, 162 Mo. 634; Gay v. Gillian, 92 Mo. 250; Woerner on Administration (2 Ed.), par. 48. (6) The testimony of Vogel, and the fact that testator lived with and was employed by Strobel for a period of nine months, show opportunity, and together with the fact that Mr. and Mrs. Strobel are the beneficiaries, make a prima facie case for the contestants, and the burden of proof is on the proponents. Sunderland v. Hood, 84 Mo. 293; Meyers v. Hanger, 98 Mo. 433; Cudney v. Cudney, 68 N. Y. 148; Bancroft v. Otis, 91 Ala. 279; Harvey v. Sullens, 46 Mo. 147; Maddox v. Maddox, 114 Mo. 35.

KENNISH, P. J.—This suit was brought in the circuit court of the city of St. Louis to contest the purported last will and testament of William J. Baier, deceased. The testator died in the city of St. Louis on the 17th day of July, 1905, leaving surviving him no blood relations nearer than uncles, aunts and first cousins. Within a few days after the death of testator his purported last will and testament was duly admitted to probate. By its terms all of testator's property was willed and devised to John Strobel and Molly Strobel, his wife. Shortly thereafter this suit was instituted by the legal heirs of the testator to contest the validity of the alleged will.

The will, omitting the certificate of the witnesses, is as follows:

"Know all men to whom these presents may come, that I, the undersigned, William Baier, of the city of St. Louis, in the State of Missouri, being of sound and disposing mind and memory, and fully recognizing the uncertainty of human life, I therefore make, publish and declare this instrument of writing for and as my last will and testament, and do make and declare as null and void all other and former wills and testaments purporting to have by me been made.

"After all my debts, if any I should have, including my doctor, nursing and funeral expenses, are first paid out of my personal and mixed property, I will, devise and bequeath all of my property, both personal and real, to John Strobel and Molly Strobel, his wife, to be divided in equal parts for the kindness, attention and the interest they have taken in me during my last illness and the favors they have done for me for the last years forever.

"I hereby make, nominate and appoint John Strobel executor of this, my last will, without bond.

"In witness whereof, I have hereunto set my hand in the presence of the undersigned witnesses, the 12th day of May, 1905.

"WILLIAM J. BAIER."

The grounds of the contest, as stated in the petition, were: (1), Want of testamentary capacity in the testator to make a will; (2), undue influence of the proponents, John Strobel and Molly Strobel, upon the mind of the testator; (3), that the alleged will was a forgery.

The case was tried before a jury and at the close of the evidence the court, by proper instructions, withdrew from the consideration of the jury the first and third grounds of the contest and submitted the case under the evidence and instructions of the court upon the issue of undue influence. The jury returned a verdict for the plaintiffs, finding against the validity

236 Sup.—42

of the will. Judgment was rendered on the verdict, and after taking the proper steps for the review of the rulings of the court complained of, the defendants appealed to this court.

The evidence tended to prove that the testator was about thirty-seven years of age at the time of his decease and that he had resided in the city of St. Louis all his life. His father had long been engaged in the grocery business in that city and the testator had assisted the father in carrying on the business until the death of the latter. The mother of the testator survived the father and died in 1901. After the death of his father the testator assumed charge of the grocery business and continued therein at the same place until the year 1899.

John C. Strobel, one of the beneficiaries named in the will, was near the age of the testator and, with a partner named Vogel, was engaged in the grocery business in the same city and not far distant from the stand of the testator and his father. In the year 1899 Vogel and Strobel purchased the grocery store from the testator and moved their grocery into the store building where testator had been carrying on his business. This place was a three-story building, owned by the testator, the first floor being used as a grocery store, and the second and third stories being rented out as living rooms. The record does not disclose what other property, if any, was owned by testator at the time of his decease. In the year 1904 Strobel purchased the interest of his partner and thereafter owned and conducted the grocery store until testator's death.

The testator was married in the year 1896 and a child, a daughter, was born of the marriage. For a few years after the testator sold out his grocery business he and his family occupied and lived in rooms in the store building. His wife died in the spring of 1904, and his daughter died a few months after at the home of its grandparents on the maternal side.

Strobel and his family moved into the second story of the building in which the grocery business was conducted, and, after the death of testator's child, testator made his home with the Strobel family and remained there near a year and until his fatal illness caused him to be taken to the hospital where he afterwards died. When the testator went to live with the Strobel family he accepted employment as a clerk in Strobel's grocery store and continued in that position until stricken with his last illness.

On or about the 10th day of May, 1905, while the testator was apparently in good health, he requested Mr. Hochdoerfer, an attorney whom he well knew, to write his will and instructed him how to draft it as to the disposition of testator's property. The attorney failed to prepare the will the first day and the testator inquired of him about it. The next day about supper time the attorney appeared with the draft of the will. He handed it to the testator in the store where the testator was at work. The latter read it over carefully and said it was exactly as he wanted it, and securing pen and ink took it to the back part of the store, placed it on the head of a barrel and there signed it and declared it to be his last will and testament. The attorney and the other attesting witness, being the only other persons present, at the request of the testator, signed the instrument as witnesses. The testator continued in his position as clerk in the store. In the latter part of the month of May, 1905, he became ill and continually grew worse until he was confined to his bed. Mrs. Strobel waited upon him in his illness. It was decided that he should be taken to the hospital and when he was getting into the carriage to go he handed Strobel a package of papers, saying, "These are for you to take care of." It was afterwards found that the will in controversy was among these papers, in a sealed envelope, which was not opened until after the testator's death.

The foregoing is deemed a sufficient statement of the facts.

Appellants complain and assign error in the action of the court in refusing to give an instruction in the nature of a demurrer to the evidence at the close of the respondents' case.

The record shows that after the court had refused appellants' said instruction, appellants did not stand upon the demurrer but offered evidence upon the issues made by the pleadings. They did not again request such an instruction at the close of all the evidence in the case, but alleged as one of the grounds of their motion for a new trial that the court erred in overruling the demurrer to the evidence at the close of the plaintiffs' case.

The general rule applicable to the state of the record in this case is that by introducing testimony after the instruction in the nature of a demurrer to the evidence has been overruled, the demurrant takes the risk of aiding plaintiff's case, waives his demurrer and cannot afterwards be heard to complain of its refusal. [Guenther v. Railroad, 95 Mo. 286; McPherson v. Railroad, 97 Mo. 253; Clark v. Railroad, 93 Mo. App. 456.]

The foregoing rule is subject to this exception: That the demurrant does not wholly waive his right to have the ruling of the court reviewed, but this court, in such cases and where such ruling is urged as error in the motion for a new trial, will look to the entire evidence, no matter by whom offered, in determining its sufficiency. [Matz v. Railroad, 217 Mo. 275; Klockenbrink v. Railroad, 172 Mo. 678; Eswin v. Railroad, 96 Mo. 290.] In addition to the demurrer to the evidence, one of the grounds of the motion for a new trial is that the verdict is against the evidence. Therefore, upon both grounds, the appellants are entitled to a review of all the evidence and to the judgment of

the court thereon as to its sufficiency to sustain the verdict. [Matz v. Railroad, supra.]

In reviewing the evidence we shall not repeat the facts set forth in the statement accompanying this opinion. It appears that the testator was a man of average intelligence and of average business ability and of good character: He attended personally to his property, looking after the collection of the rents and keeping it in repair. He loaned and borrowed money, and as a clerk in the grocery store sold goods, made change and was considered a competent man in that position. He was in the prime of life. In a few years he had lost his parents, his wife and child, and had no blood relatives living nearer than uncles, aunts and first cousins. He was not on intimate terms of association with his relatives and evidently felt little or no attachment for them. He had become acquainted with Strobel when they were competitors and before testator's marriage. He afterwards sold his business to Strobel and partner. Later he loaned Strobel money to buy out his partner, all of which loan, with interest, Strobel repaid. At the testator's request, after the loss of his family, he made his home with Strobel and accepted employment as a clerk in the store. So far as their business relations were concerned Strobel and testator dealt with each other at arms' length. Strobel paid testator rent for the building and wages for his services, and testator paid Strobel what he owed him. That testator had entire confidence in Strobel and that the most cordial and friendly relations existed between the two men abundantly appears from the evidence. These friendly relations had been growing stronger during the period of about ten years. Mrs. Strobel had waited on testator in his sickness and had waited on testator's wife in her confinement. These facts supply substantial reasons why testator should have recognized the Strobels as proper objects of his bounty.

After a most careful examination of the evidence we have been unable to find one fact or circumstance indicating that the Strobels, or either of them, were in any manner connected with the execution of the will, or that they, by word or deed, had any part in procuring its execution. The testator, when at work in the store, gave instructions to an attorney as to the drafting of the will and also as to its provisions. He was in the store at work when the prepared draft was submitted to him and after reading it said it was what he wanted and thereupon executed it as heretofore stated. He remained at Strobel's near a month after the making of the will, having the will in his possession, and when leaving for the hospital he handed it, with other papers, to Strobel, saying, "These are for you to take care of."

Neither have we found any basis in the testimony to warrant the inference of undue influence of the Strobels upon the mind of the testator in their conduct during his last sickness. If the Strobels had been instrumental in procuring the execution of the will, they were most favorably situated when testator became ill to hold the advantage thus gained. The testator was in their home. Relatives could not visit him to impress upon his mind their claims to his bounty, without the Strobels' consent. The evidence shows that when the testator became sick the Strobels telephoned the relatives and had the testator taken to the hospital where his relatives could and did visit him as frequently as they desired. He remained in the hospital about six weeks, knowing that the will was in Strobel's custody, and during all that time he could have revoked the will had he been so disposed. The testimony of Strobel's partner to the effect that Strobel had said he would like to get testator's child, after its mother had died, so that he could get on the good side of testator and get his property, is of the slightest, if any, probative force. The witness himself did

not attach any importance to it and testified that he regarded it as a joke. The testator was then in good health. He was no older than Strobel, had one child, and it is a far stretch to assume that Strobel speculated on securing his property under such circumstances. Neither is there any probative force in the testimony of Mrs. Gradel to the effect that testator told her to keep the rent money, because if she paid it to testator Strobel would get it, and that testator did not entertain a good opinion of Strobel, etc. Such testimony was not competent for any purpose on the issue of undue influence, except to show the testator's feelings and affections for the objects of his bounty. [Teckenbrock v. McLaughlin, 209 Mo. 533; Schierbaum v. Schemme, 157 Mo. 1; Gibson v. Gibson, 24 Mo. 227; 13 Ency. Evidence, 268.]

The law is settled that unless there is substantial evidence to sustain a verdict finding against the validity of a will, the verdict will not be permitted to stand. [Hughes v. Rader, 183 Mo. 630; Tibbe v. Kamp, 154 Mo. 545; Jackson v. Hardin, 83 Mo. 185; Knapp v. St. Louis Trust Co., 199 Mo. 640.]

It is also the law of this State that "any degree of influence over another, acquired by kindness and affection, can never constitute undue influence within the meaning of the law." And this principle applies in the case of a friend who has been made the beneficiary in a will, as well as in the case of a wife or child. [Campbell v. Carlisle, 162 Mo. 634; Seibert v. Hatcher, 205 Mo. 83; Dausman v. Rankin, 189 Mo. 677.]

In the case of Campbell v. Carlisle, supra, l. c. 647, this court used language peculiarly applicable to the facts of this case, as follows: "The testator was in full possession of his mental faculties at the time of its execution, and dictated its terms; he knew the objects of his bounty and what property and money he possessed; he was childless, his nearest relative being

his sister, the plaintiff, who lived in the State of Arkansas; he was ill and unable to care for himself, and went to the house of Carroll and wife, where they nursed him and administered to his wants, and although he gave to Mrs. Carroll a liberal part of his estate, undue influence in the execution of the will can not be inferred from such circumstances. In the matter of Gleespin's Will, 26 N. J. Eq. 523, it was said: 'Influence gained by kindness and affection will not be regarded as "undue" if no imposition or fraud be practiced, even though it induce the testator to make an unequal and unjust disposition of his property in favor of those who have contributed to his comfort and ministered to his wants, if such disposition is voluntarily made.' "

Plaintiffs alleged in their petition that: "The said paper writing purporting to be the last will of William J. Baier was not, in fact, his act, but was executed in accordance with the directions and wishes, and under the persuasion and influence of said John Strobel and Molly Strobel."

Under the law governing will contests the burden of proving undue influence rests upon the party attacking the will. [Dausman v. Rankin, 189 Mo. 677; Morton v. Heidorn, 135 Mo. 608; Doherty v. Gilmore, 136 Mo. 414.] A careful reading and consideration of the testimony in the record before us have convinced us that the plaintiffs failed to meet this requirement of the law. It follows that the court should have sustained the motion for a new trial.

Respondents urge in their brief that the facts of this case bring it within the principle of law applicable in the case of fiduciary or confidential relations existing between the beneficiary and testator, and that upon the proof of the existence of such relations the burden was shifted to the beneficiaries to prove that the will was not the product of their undue influence over the mind of the testator. This contention is wholly with-

out support in the evidence, and besides the case was not tried on that theory in the lower court.

Entertaining the views herein expressed, we hold that the evidence was not sufficient to sustain the verdict and that the case should be reversed and remanded for a new trial. It is so ordered.

*Ferriss* and *Brown, JJ.,* concur.