For the reasons indicated, this judgment will be reversed and the cause remanded.

PRENDERGAST, J. (dissenting in part). I think the bill to the argument of the prosecuting attorney, as explained by the court, shows no error.

———

MILLS v. MILLS et al.   (No. 7958.)

(Court of Civil Appeals of Texas, Dallas. June 1, 1918.   Rehearing Denied Oct. 26, 1918.)

1. TRIAL ⬅️139(1)—DIRECTION OF VERDICT — SCINTILLA OF EVIDENCE.

It is the duty of the court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a suspicion of the existence of the facts sought to be established, and whether the testimony has more than such force is for the court.

2. WILLS ⬅️302(2)—PROBATE — CONTEST — FORGERY—EVIDENCE.

The probate of a will cannot be denied on ground of forgery, on proof that proponent had opportunity to become proficient in copying signatures of attesting witnesses or signature of maker of will.

3. WILLS ⬅️302(2)—CONTEST — FORGERY — EVIDENCE.

In contest of will, evidence held insufficient to sustain judgment that proposed will was a forgery.

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Proceedings by J. H. T. Mills against Marshall Mills and others to probate the will of Ella D. Mills, deceased. Judgment for proponent in the county court was reversed in the district court on a special verdict, and proponent appeals. Reversed and remanded.

Wear & Frazier, J. E. Clarke, and J. J. Averitte, all of Hillsboro, for appellant. Shurtleff & Cummings, of Waco, and Chas. L. Black, of Austin, for appellees.

TALBOT, J.   This proceeding was commenced by the appellant in the county court of Hill county, Tex., and had for its object the probate of the last will and testament of Ella D. Mills, deceased. By the will all of the testatrix's property, except $40 to be equally divided between the testatrix's three brothers, W. L. Mills, Marshall M. Mills, and V. H. Mills, and her sister, Mrs. R. W. Frame, was devised to the appellant. The appellees, Marshall M. Mills and Mrs. R. W. Frame, joined by her husband, R. W. Frame, brother and sister of the deceased, by writ-

ten pleadings, contested the probate of the will on the grounds: First, that the said Ella D. Mills did not execute the will; second, that if she did execute said will, she had not at the time of its execution sufficient mental capacity to make a will; third, that if the deceased executed said will, its execution was the result of improper and undue influence exercised over her by the appellant and his brother, V. H. Mills. Judgment in favor of the proponent, appellant here, probating the will was rendered in the county court. From this judgment the contestants, appellees here, appealed to the district court, where judgment upon a special verdict of the jury was rendered in favor of contestants, denying probate of the will, and proponent appealed to this court. There was no testimony offered in support of the pleaded issues that the deceased at the time of the execution of the will in question had not sufficient mental capacity to make a will, or that the same was the result of undue influence exercised over her by the appellant and his brother, V. H. Mills. The only question submitted to the jury upon trial in the district court was: "Did Ella D. Mills execute the instrument offered for probate?" This question the jury answered in the negative, and the contention of appellant in this court is, in substance, that the evidence adduced conclusively established that the will was executed by the deceased, Ella D. Mills, and that the trial court erred in not directing the jury, as requested by appellant, to answer the question submitted in the affirmative.

We have carefully considered the testimony shown by the record sent to this court, and conclude that the contention of appellant should be sustained. The testatrix, Ella Mills, died the 30th day of April, 1915, at or near Hubbard City, Hill county, Tex., where she had lived several years, leaving surviving her one sister, Mrs. R. W. Frame, whose maiden name was Pally Mills, one of the appellees herein, and four brothers, J. H. T. Mills, the appellant, the appellee Marshall M. Mills, W. L. Mills, and V. H. Mills; the last two not appearing as parties to this controversy. The will which the appellant seeks to have probated is dated October 24, 1912, and bears the names, in the usual and proper place, of D. C. Shelton and G. C. Sharbutt as subscribing witnesses thereto. D. C. Shelton died in 1914, some time before the death of the testatrix, Ella Mills, but G. C. Sharbutt was living and testified in the trial of this case. The substance of his testimony is that he had been living in Hubbard City since 1911, was 28 years old, and was well acquainted with Ella Mills in her lifetime; that he was acquainted with D. C. Shelton, and that he and D. C. Shelton signed the will in question as subscribing witnesses thereto in the pres-

ence of each other and in the presence of the said Ella Mills at her request; that at the time he and D. C. Shelton signed the will they were in the machine shop of J. H. T. Mills and V. H. Mills in Hubbard City; and that the testatrix, Ella Mills, signed the will there in the shop in the presence of himself and D. C. Shelton. This witness further testified on cross-examination that he did not remember whether the will at the time he signed it had "any heading on it or not or if anything had been cut off the top of it"; that he did not remember what was in the will, but that he recognized his signature to it as a witness; that he signed the will as a witness in October, 1912; that the only way he remembered that it was the 24th day of October was by the date of the will, and that he remembered signing the will; that when the will was found something like a year after the death of the testatrix the appellant brought it to him and said he found it; that at this time the other subscribing witness, D. C. Shelton, was dead, and had been dead eight or nine months; that he never heard of J. H. T. Mills or V. H. Mills saying anything about the will during the lifetime of D. C. Shelton; and that he (witness) did not say anything about a will during D. C. Shelton's lifetime. He further said that before and up to the time the will was found he was there in Hubbard City working in a grocery store; that he understood the Mills brothers had had some controversy about Ella Mills' property, but understood they had settled it, and that, notwithstanding he was with them frequently, he did not tell them anything about a will; that J. H. T. Mills and V. H. Mills came into the shop when the will was being signed, but did not know anything about the will or what was being signed; that at the time he signed the will as a witness he was 24 years old; that he went to the Mills brothers' shop often to trade with them, and that on the occasion the will was signed he was there to get their answer about a pending trade; that he, D. C. Shelton, and Ella Mills were the only persons present when the will was signed; that the will was all written out and just needed signing when Ella Mills asked him to sign as a witness; that she signed it first, then D. C. Shelton, and then he signed it; that Ella Mills got the will out of her purse, an ordinary ladies' purse, but that he could not tell the color of the paper the will was written on or how long the paper was; that the Mills boys were busy at work about 20 feet away at the time the will was signed; and that he had not asked them about the trade he was endeavoring to make with them. This witness further stated that he was delivery boy for the grocery store where he worked, but that he did as much work in the store as he did delivering.

The substance of the testimony of J. H. T.

Mills, the appellant, is that the testatrix, Ella Mills, was about 44 years old when she died, but looked to be about 25 years old; that seven or eight days after her death he gathered up her papers, which he found in her house, and carried them to his room and put them in a desk for safe-keeping; that he and his sister, Mrs. R. W. Frame, and her husband, found other papers belonging to the deceased buried in a glass fruit jar "below the house by the tabernacle"; that among the papers found in the fruit jar they discovered a will made by Ella Mills in which all of her property was devised to her sister, Mrs. R. W. Frame; that this will was dated in 1907; that his sister, Mrs. Frame, turned this will over to him to settle it according to the way he understood about the papers and do what he thought was right about it; that he showed the will to his brothers "and all the heirs," and it was agreed among them "to settle it out of court; that deeds were made, and he thought it was settled, but the other heirs refused to abide by the settlement, and brought suit in the district court of Hill county against him, which is now pending." He further stated that the "settlement" (the nature of which it does not appear he was asked to disclose) was discussed freely and fully by all of them before it was reduced to writing; that his brothers and sister had always had access to the first will executed by Ella Mills, except during the time it was lost or mislaid, and that this will was before the county court during the trial in that court for the probate of the will devising the bulk of Ella Mills' property to appellant; that the will offered for probate was found by him about ten months after Ella Mills died in the desk where he had put her papers, soon after her death; that he did not look much in the papers when he took them down to his room, because he thought he knew what was in them; that about ten months after Ella Mills died he was looking through the papers in his desk and found the will offered in probate. A photographic copy of the will was handed to the witness, and he said:

"This will I am seeking to probate I found in a drawer in my desk in my room where I was staying at the time of Ella Mills' death. I had not examined that drawer where I found it from the time she died until I found the will, about 10½ months afterwards. * * * I never had any knowledge of the existence of this will until I found it there in that drawer about 10 months after her death. I know the handwriting of my sister Ella Mills. That is her handwriting to that will. My sister Ella lived with me and my brother V. H. Mills most all her life."

The witness was then shown some checks and notes with the genuine signature of the testatrix to them, and he stated:

"That is the signature of Ella Mills on all the checks you handed me, and that is her signature on the three vendor's lien notes you hand me."

This witness further said:

"During the 10 months until I found the other will I didn't do anything towards having this will that gave Mrs. Frame the property probated. The will got lost, and was found some time in September, 1916. I found it. In about a month after her [Ella Mills'] death we had it about settled by deed; all the heirs deeded all the property over to Mrs. Frame. * * * Yes; after I found the lost will willing the property to me, I found the first will. Yes: Mrs. Frame told me when we found the first will to take the will and settle it the way I thought was right, but I didn't take the responsibility, but consulted with her about it."

A transcript of the testimony taken in the county court, subscribed and sworn to by the witnesses, was introduced in evidence by the appellant and is made a part of the statement of facts sent to this court. The appellant testified, as shown by said transcript, in the trial in the county court, in effect, that the entire will in question was in the handwriting of the testatrix, Ella Mills. W. R. Elkins testified, it appears, in the trial had in the county court, but it does not appear that he testified in the trial in the district court. In the county court he said, among other things:

"I have some of the letters that I received from Ella Mills during her lifetime. I have one letter that bears on the question of a will purported to have been made by her. * * * I have it in my pocket. It is dated January 5, 1915. * * * The Mills brothers first called on me for this letter probably in May or June. They wanted to know if I had any letters that Ella had written that would help them out in any way in probating a will. * * * This letter is in her handwriting. I did know before I received this letter that a will had been made by Ella Mills. She showed me the will is how I knew this. She showed me that will in the latter part of the year 1912. She was in her house when she showed me the will. That [the will signed October 24, 1912] is the will that she showed me. I don't think any one else was present. * * * The will Miss Mills showed me the latter part of 1912 is the will dated October 24, 1912, signed by Ella Mills and witnessed by D. C. Shelton and G. C. Sharbutt."

In addition to the foregoing testimony establishing the execution of the will in question by Ella Mills, J. G. Scott testified as an expert upon the subject of handwriting that he was assistant cashier of the First State Bank of Hubbard City; that he had been in the banking business since 1909; that since he had been in that business he had made a practice of studying the genuineness of signatures; that he knew D. C. Shelton during his lifetime and knew his signature; that, upon examination of the signature "D. C. Shelton" appearing on the will as a subscribing witness thereto, he was of the opinion that it was the genuine signature of D. C. Shelton. He further said:

"I never saw Ella Mills write her signature, but I got acquainted with what purports to be her signature as her checks would pass through our bank. This will you hand me [the will of date October 24, 1912] contains the genuine handwriting of Ella Mills, in my opinion. Also the three vendor's lien notes which you hand me contain the genuine signature of Ella Mills, in my opinion, and is the same signature on the three notes as that contained in the will, in my opinion."

He further said that a person's signature is not the same all the time, that they vary from time to time, but that the general characteristics of the handwriting will remain the same; that he could more easily remember a signature than the face of a person; that there are distinguishing characteristics that follow handwriting. On cross-examination this witness, among other things, testified in substance that Ella Mills did not keep her account at the bank with which witness was associated and there were few of her checks that came through that bank; that her account was at the First National Bank, and the checks that came through witness' bank afforded him the only opportunity he had for learning her signature. He further said that he did not think copying a person's signature was an easy matter; and in answer to the question, "A person having possession of these three notes with 'Ella Mills' written on them, and a writing desk in his room, in the course of ten months practicing writing Ella Mills' signature, what is your opinion about the fact that they would become quite proficient in copying her signature"? he said, "In my opinion it might possibly be done, but a man would have to be an expert to do it so as not to be detected; yes; I mean a person would have to be an expert in order for it to get by me without my detecting it." The witness was handed two checks with the genuine signature of the testatrix to them, and he said, "In my opinion, the same person signed this check you hand me marked No. 4 as signed the will." He also stated, in effect, that the same person who signed Ella Mills to check No. 3 signed the will. The witness said the M's and ll's are not alike in the two signatures, but that there was a "difference allowed on account of one being written in ink and the other with pencil."

Mrs. M. M. Mills, wife of appellee Marshall M. Mills, testified in substance, among other things, that about ten months after the testatrix's death she had a conversation with the appellant in reference to his having found a will; that he was at her house and brought the subject up about the will; that he said he found a will dated January 5, 1912, but did not say just when he found it, or who would get the property under the will he found. On cross-examination she said:

"Yes; my husband and all of us knew about this second will. J. H. T. Mills [appellant] had shown it to my husband and his brothers, and they had discussed the matter. They never did file the first will for probate, but I understood Mrs. Frame couldn't get it. She [Mrs. Frame] didn't say she turned it over to J. H. T. Mills, but said he wanted to read it and kept it. J. H. T. Mills told me about finding the second will down among some papers in the desk. He showed that will to my husband, but didn't say when it was dated."

The substance of R. W. Frame's testimony is that his wife was a sister of the testatrix, Ella Mills; that he was present when a will was found in a fruit jar leaving the estate of Ella Mills to his wife; that appellant was also present; that he and appellant read the will over; that appellant asked him to let him see the will, and that when he did appellant folded it up and put it in his pocket; that he asked appellant for the will twice after that, and appellant said he could not afford to give them up, that the will and the deed covered everything in the world he and his brother Hicks (V. H. Mills) owned, and he would not give them up; that after the first will was found devising the property to his wife and all of them had read it, they all entered into a contract and made deeds passing title to these lands, and J. H. T. Mills joined in the deeds; that after the deeds were signed suit was filed in the district court to cancel the deed; that the deeds referred to were made long before the second will was filed for probate. He further said that the way the deeds were drawn up about two-thirds of the property was made to appellant and his brother Hicks, and one-third to his witness' wife. He said, "Tom Mills [appellant] drew up the deeds himself and misrepresented it to me and my wife." On re-cross-examination the witness said, "They made a deed conveying the property to my wife," and in answer to the question if she did not after that deed it back to them because it was their land in the beginning, he said, "Yes; she signed the deed and approved it." The witness further said that he did not know just when this deed was made to his wife with reference to the time the "Mills boys" were sued by Carlisle of Hubbard City; that after the death of Ella Mills that suit was still pending, and that the "Mills boys" made his wife a deed to everything to avoid that suit; that Ella Mills had not reconveyed the land back to the Mills boys before she died.

M. M. Mills testified as follows:

"I remember the circumstances of J. H. T. Mills coming to me in the field and telling me he had found a will leaving the property to him. He snowed me the will, and it was dated January 5, 1912. Mrs. Frame was not married at that time, the date of that will. This will he is now seeking to probate is not the will he brought to me in the field. The paper he brought to me in the field had a bicycle heading up over the top. The date of this will he is probating is 24th of October, 1912. The will he brought me in the field was coarser writing than this will is."

Mrs. R. W. or Pally Frame testified that Ella Mills was her sister; that they lived together and worked together all the time until witness married; that they were always friendly, and that they made their wills at the same time, and that when she died her property was to go to Ella Mills and that when Ella Mills died her property was to go to the witness; that Mr. Tomlin in Hubbard City prepared their wills, and that she had seen both of them since the death of Ella Mills; that they were found buried in a fruit jar together; that Ella Mills did not have much education and was accustomed to doing field work; that she could read and write; that she transacted her own business, wrote her own checks, and marketed her own stuff; that she had a bank account and drew it out; that she (witness) had seen her write checks; that she read newspapers some; and that she did not know whether Ella Mills wrote out her checks or just signed them.

Three vendor's lien notes bearing the genuine signature of the testatrix, Ella Mills, and which were used in evidence for comparison with her signature to the will, and five checks bearing the genuine signature of D. C. Shelton, one of the subscribing witnesses to the will involved in this controversy, and which were used in evidence for the purpose of comparison with the signature of the said Shelton appearing on said will, together with the photographic copy of the will introduced in evidence, have been sent up by agreement of counsel for the consideration of this court.

[1] The foregoing contains practically a full statement of all the testimony in the case material to the question under consideration, and is, in our judgment, of such a character as to leave no room for ordinary minds to differ as to the conclusion to be drawn from it. The scintilla doctrine has been exploded, and the rule established "that it is the duty of the court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established; such testimony in legal contemplation falling short of being any evidence." And whether the testimony has more than the degree of probative force mentioned is a question for the determination of the court. The leading case in Texas declaring the rule to be as stated, and from which the language just quoted is taken, is Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059, but since the decision in that case many others to the same effect have been handed down by the appellate courts of this state. The application of the rule is apparent. The question is whether or not there is any evidence from which the jury trying the case might reasonably infer and conclude, as they did, that the testatrix did not execute the will; and our conclusion is, as hereinbefore indicated, that this question should receive a negative answer. The facts and circumstances in evidence necessarily relied on by the appellees to sustain the judgment of the court below raises, in our opinion, no more than a "mere surmise or suspicion" that the will in question was not executed by the testatrix, but a forgery. They merely suggest or give rise to the thought, without possessing any probative force to establish the fact sought to be established, that

appellant forged the will. There is nothing in the record that tends to show that the subscribing witness Sharbutt had any motive to swear falsely, and his testimony, unshaken or weakened by the cross-examination to which he was subjected, is that the testatrix, Ella Mills, did, in his presence and the presence of the other subscribing witness, D. C. Shelton, sign the will, and that he and Shelton signed the will as witnesses at her request. Shelton was dead, and of course his testimony could not be had, but the genuineness of his signature was not attacked by any testimony offered by the appellees, and the undisputed testimony of J. G. Scott, who stated that he knew the handwriting of Mr. Shelton, and who was clearly shown to be well qualified to speak as an expert, testified without equivocation that in his opinion the signature "D. C. Shelton" to the will was Mr. Shelton's genuine signature. This witness also gave it as his unqualified opinion, based upon his knowledge of the testatrix's handwriting and the comparison made with her genuine signature to the notes furnished him, that the name "Ella Mills" signed to the will as maker thereof was the genuine signature of the said Ella Mills.

Again, aside from the testimony of the appellant, who had been acquainted with the handwriting of the testatrix ever since she was able to write, to the effect that the will was wholly in her handwriting and bore her genuine signature, the testimony of W. R. Elkins, who appears to be a disinterested witness, is that the testatrix, Ella Mills, showed him the identical will involved in this controversy in the latter part of the year 1912. Against this volume of positive testimony showing the execution of the will the appellees, as shown by argument of counsel in their briefs, array certain claimed facts and inferences drawn by them, as being sufficient to call in question the genuineness of the signature of Ella Mills to the will, and to require the submission of its execution by her as an issue of fact for the determination of the jury. These facts and inferences are, in substance, the taking of the first will, ·in which the bulk of the testatrix's property was bequeathed to Mrs. Frame, by the appellant and his refusal to surrender it to R. W. Frame or file the same for probate; that the will which appellant showed R. W. Frame and which he claimed devised to him the property left by the deceased was dated January 5, 1912, had a bicycle heading on it, and the writing coarser than the writing of the will presented for probate; that before the time appellant claims to have found the second will he sought to secure possession of the major portion of the estate left by the deceased, Ella Mills, by false representations; that during the months which elapsed between the death of Ella Mills and the supposed finding of the will sought to be probated, there was in the possession of the

appellant a deed upon which appeared the signature of D. C. Shelton, and the proof showed that appellant was a man of some education, and it is a matter perhaps of common knowledge that a person in that length of time could become proficient in copying the signature of another; that the testimony of the witness Sharbutt presents a very unusual situation, in that he was a delivery boy in the town of Hubbard City, knows that he has witnessed a will, and knows there is a controversy after the death of Ella Mills, whose will he claims to have witnessed, about who is to receive the property, and yet he never makes known to appellant, his friend, that he had witnessed such a will, although he knew the other witness to the will was dead, and never tells any one that there is such an instrument in existence; that the first will, devising the bulk of Ella Mills' property to her sister, Mrs. Frame, was at the date of her death still buried in the fruit jar; the improbability of Ella Mills taking the first will from the fruit jar, copying it in drawing the second will, and then again burying it in the fruit jar. These matters, admitting for the sake of argument that they all appear from the evidence, may be sufficient to raise a surmise or create a suspicion that Ella Mills did not execute the will in question, but their probative force is, in our opinion, too weak to justify a finding that the will was a forgery, and not in fact executed by Ella Mills. There seems to have been no effort made to show by the testimony of any witness acquainted with the handwriting of the testatrix, Ella Mills, that the signature to the will was not in the handwriting of Ella Mills. Nor does it appear that appellees endeavored by expert testimony to show that the signature to the will was not the genuine signature of the testatrix. It is undisputed that she kept an account with the First National Bank of Hubbard City, and yet no officer of that bank, so far as the record discloses, was called upon to give his opinion as an expert as to whether or not the signature to the will was the genuine signature of Ella Mills. All of the appellees in the case testified in the trial. They must have been familiar with their sister's handwriting, and yet it does not appear that either of them gave it as his or her opinion that the signature was not in the handwriting of the testatrix. It is but reasonable to assume that, if they were of the opinion that the handwriting was not that of Ella Mills, they would have so testified.

[2] Touching the claim that appellant during the time intervening between the finding of the first will and the discovery of the second endeavored to secure a deed to and possession of the major part of the estate left by Ella Mills by false representations, thereby indicating an intention to secure the property at all hazards, is confusing and insufficient, it occurs to us, to establish such claim. The

witness R. W. Frame, upon whose testimony the claim mainly rests, did not state what were the false representations charged by him to have been made by appellant. He merely stated that appellant "drew the deed himself and misrepresented it to me and my wife." Neither the jury nor the judge presiding could say from such a statement that the representations, if any, were of such character as evinced a purpose on the part of appellant to secure the property wrongfully and without legal right. On the contrary, the testimony of the witness Frame indicates that the land involved belonged to appellant and his brothers, and had been deeded to Ella Mills in her lifetime and to this witness' wife to prevent it from being subjected to the payment of a claim sued on in the district court of Hill county by one Carlisle, which suit was still pending when Ella Mills died, and apparently the title then in her by reason of the simulated transaction above mentioned. As shown in our statement of R. W. Frame's testimony, he testified that a deed was made conveying the property to his wife, and that she deeded it back to appellant and his brothers "because it was their land in the beginning." Therefore the asserted claim that the appellant by false representations endeavored to secure possession of the major part of the estate left by Ella Mills is without force as a circumstance in determining the issue under consideration. Again, there is no testimony in the record from which it may be inferred that the testatrix, or any one else, removed from the fruit jar the will devising the property to her sister Mrs. Frame and copied it verbatim, except with the name of J. H. T. Mills inserted in the place of her sister's name, and then again buried the original will in the fruit jar, as argued by counsel for appellees. A copy of the will offered for probate appears in the record, but a copy of the will found in the fruit jar does not, and no witness, so far as the record discloses, testified that he compared the wills and that the second was a copy of the first except in the particular mentioned. So it does not appear that the second will was an exact copy of the first, except that the name of appellant, J. H. T. Mills, was inserted in the second will in the place of his sister's name. Likewise the argument that the proof showed that the appellant, during the ten months which elapsed between the death of Ella Mills and the supposed finding of the will offered for probate, had possession of a deed upon which appeared the signature of D. C. Shelton, and that appellant was a man of some education, and that "it is a matter perhaps of common knowledge that a person in that length of time could become proficient in copying the signature of another," is without probative force in determining said issue. We do not regard it as a matter of common knowledge that a person with or without education could, in any given length of time, become proficient in copying the signature of another. The expert witness Scott said, in effect, that it might be possible, but that the copying would have to be done by an expert to escape detection by him. Besides, the probate of a will cannot be denied on the ground that it is a forgery on proof of facts which, at most, do no more than show that the proponent had the means and opportunity of becoming proficient in copying the signatures of the subscribing witnesses thereto, or the signature of the maker of the will.

[3] There is no direct testimony tending to show that Ella Mills did not execute the will, and we are of the opinion that it cannot reasonably be inferred from any or all the circumstances in evidence that she did not. The jury's finding therefore is not supported by the evidence, and the judgment based upon it must be set aside. As correctly said in Weber v. Strobel, 236 Mo. 649, 139 S. W. 188:

"The law is settled that, unless there is substantial evidence to sustain a verdict finding against the validity of a will, the verdict will not be permitted to stand."

The trial court should have instructed a verdict in favor of appellant, and upon such verdict should have entered judgment probating the will. Having failed to do so, and the case having been fully developed, it becomes the duty of this court to render such judgment.

It is therefore ordered that the judgment of the district court be reversed, and judgment here rendered in favor of appellant admitting the will presented by him to probate.